### Fort Worth Street Railway Company
### v. Thomas J. Ferguson.
#### No. 1654.

1. **Charge of Court—Damages for Personal Injuries.**—A charge instructing the jury to assess the damages "at such sum as would be a fair and reasonable compensation for such physical injuries and suffering as plaintiff's wife sustained from the collision, and for such mental sufferings as they might believe from the evidence plaintiff's wife sustained by reason of the collision," *Held*, correct as a general statement of the measure of recovery; and that if defendant desired a more definite statement, it should have so requested by special charge.

2. **Street Railway Company—Lease—Liability of Lessor.**—The rule of law that a chartered railway company can not, by lease to another company, without express permission of law, absolve itself from its charter obligations, and from liability for the negligent operation of its road by the lessee, is applicable also to street railway companies.

3. **Same—City Ordinance—Quære.**—Whether an ordinance by a city council authorizing a street car company to lease its line can also, by express provision, authorize such company to exempt itself in the lease from liability for the negligent operation of the line by the lessee, and from its own charter obligations, seems doubtful, but is left undecided.

4. **Same—Liability—Construction of Franchise Grant.**—Where a street car company is granted the franchise of a certain street on condition that it construct and operate a line thereon between the public square and a certain railway depot, and thereafter, through negligence, a passenger on such line is injured by a collision, the street car company is not exempted from liability therefor because of the fact that the collision occurs at a point that is not on the street, but on land belonging to the railway company that owns the depot.

5. **Same—Single and Double Track.**—Where the lessee of a street railway line, under authority of the lease, changes the line from a single to a double track, this will not absolve the lessor company from liability for the lessee's negligent operation of the double track line.

Appeal from Tarrant. Tried below before Hon. W. D. Harris.

*A. M. Carter,* for appellant.—1. The court erred in instructing the jury to find against the Fort Worth Street Railway Company if they found against the North Side Railway Company, because, as stated by the court, the lease between the two companies was void, because the charter of neither of said companies had been read in evidence, nor was it otherwise shown by evidence what law governed or controlled either of said companies, and the court was not authorized to presume that the charters of either or both of said companies conferred upon them anything else other than such powers as were ordinarily conferred upon strictly private corporations. Street Railway v. Street Railway, 68 Texas, 169; Railway v. Morris, 67 Texas, 699; 68 Texas, 59, 234, 652; 69 Texas, 314; 70 Texas, 587; Cable Car Co. v. Johnson, 25 Pac. Rep., 1085; Const., art. 10, sec. 7; Booth on St. Rys., secs. 10–13, 424, 425.

2. In an action by the husband for damages occasioned to his wife from being bruised, hurt, and injured in a collision, it is proper to permit him to recover such a sum in money as the jury may believe from the evidence will be a fair and reasonable compensation for the physical injuries and suffering entailed upon his wife thereby, and for her mental suffering also, if any she sustained. This measure of damages was submitted to the jury, and properly so. Railway v. Levy, 39 Texas, 568; Railway v. Trott, 86 Texas, 412; Yoakum v. Kroeger, 27 S. W. Rep., 953.

In an injury to the wife the husband can not recover for injury to his feelings. Tel. Co. v. Cooper, 71 Texas, 512; Railway v. Martino, 2 C. A. R., 645.

Damages only for the mental suffering of plaintiff's wife naturally resulting from the injury are recoverable; and not damages for mental suffering caused by the collision. Railway v. Douglass, 69 Texas, 697; Suth. on Dam., secs. 21–24.

*Capps & Cantey,* for appellee.—It appearing from the evidence that the North Side Railway Company, as lessee of the Fort Worth Street Railway Company, was operating the line of street railway in Fort Worth upon which plaintiff's wife, as a passenger, was being transported at the time of the collision, and that said Fort Worth Street Railway Company, as lessor, was receiving revenues from said North Side company for the use of its rights, properties, and franchises, and that the same had been granted to said Fort Worth Street Railway Company and were still held by it, said lessor company could not absolve itself from liability for injuries to passengers over its line occasioned by the negligence of the lessee company, and its liability was properly made to depend wholly upon the liability of the North Side Railway Company. Booth St. Ry. Law, secs. 425, 426; Ricketts v. Railway, 5 South. Rep., 353; Abbott v. Railway, 80 N. Y., 27; Harmon v. Railway, 13 Am. St. Rep., 688; same case, 28 S. C., 401; Braslin v. Railway, 145 Mass., 64; Railway v. Brown, 17 Wall., 445; Lakin v. Railway,

13 Ore., 436; 11 Pac. Rep., 68; Railway v. Culbertson, 75 Texas, 375; Railway v. Rushing, 69 Texas, 307; Woodhouse v. Railway, 68 Texas, 58; 2 Am. and Eng. Ry. Cases, 541; 2 Am. and Eng. Encyc. of Law, 756.

STEPHENS, ASSOCIATE JUSTICE.—The wife of appellee sustained personal injuries, on the 25th day of August, 1889, in the city of Fort Worth, while a passenger on the street car of the North Side Railway Company, by reason of a collision between the car in which she was riding and a backing freight car of the Texas & Pacific Railway Company, at a point where the switch track of the latter company crossed the street car track of the Fort Worth Street Railway Company, then leased to and being operated by the North Side Railway Company.

A clear case of negligence was made against the North Side Company, but none at all against the Texas & Pacific Company. The Fort Worth Company, appellant, was held liable, together with the North Side Company, as lessor of the latter, and the jury, by permission of appellee, were instructed to return a verdict in favor of the Texas & Pacific Company:

In the year 1874 the Fort Worth Street Railway Company was chartered and duly organized under the laws of Texas. Thereafter, on July 15th of that year, the following ordinance was duly adopted by the city council of the city of Fort Worth:

"Section 1. That the Fort Worth Street Railway Company, a corporation duly organized and authorized by charter under the laws of Texas, certified to by the Secretary of State, under the great seal of the State of Texas, bearing date January 8, 1874, be, and the said company is hereby, fully authorized and empowered with the right to construct, equip, operate and maintain, own and control, in accordance with the conditions in their said charter contained, one or more lines of street railway, together with all necessary switches, turnouts, sidings, stables, offices, and depots, on either or all of the following named streets and their extensions in said city, to wit: Belknap and Weatherford streets, running east and west; Jennings avenue, Houston, Main, and Rusk streets, running north and south; and to such other streets or avenues in said city as may on application be designated by ordinance by the said city council aforesaid; provided, said company shall construct and operate at least one line of street railway on one of the above named streets running from the public square to the Texas & Pacific Railway depot, or vicinity thereof, within eighteen months from the date of this ordinance, or within six months from and after the completion of the Texas & Pacific Railway to the said city of Fort Worth; and provided further, that said Fort Worth Street Railway Company shall fix a rate of passenger fare not to exceed 10 cents per mile, or less, and a freight tariff not to exceed 50 cents per 100 pounds per mile, or less.

"Sec. 2. That the city council of the city of Fort Worth reserves the right to determine when the requirements of traffic necessitates any further track than the one selected and built by the company in pursuance of the right granted it in the first instance, and shall then notify the company of their judgment, and specify the street on which they deem the railway desirable, and if the company shall not comply with said notice within twelve months, then the right to those streets shall be forfeited.

"Sec. 3. That on the filing by said Fort Worth Street Railway Company of a duly certified copy of their said charter, and the written acceptance of said company of this ordinance with the secretary of said city, said company shall be authorized to act hereunder without further ordinance or permit by the city council.

"Sec. 4. That this ordinance shall take effect and be in force from and after its passage."

Under this charter and ordinance, from that time, or soon thereafter, until about the 28th day of November, 1888, appellant owned and operated a street car line on Main street, from the public square to the depot of the Texas & Pacific Railway Company, in the city of Fort Worth. At the latter date, it made a lease to the North Side Railway Company, in the terms following:

"STATE OF TEXAS, }
"County of Tarrant. }

"This indenture, made on this the 28th day of November, 1888, between the Fort Worth Street Railway Company, of Tarrant County, Texas, and the North Side Railway Company, of said county and State, witnesseth:

"1. That in consideration of the covenants herein contained on the part of the North Side Street Railway Company, to be kept and performed, the said Fort Worth Street Railway Company doth grant, demise, and lease unto the said North Side Railway Company the following described property, to wit:

"The franchise and all the lines of street railway of said Fort Worth Street Railway Company in the city of Fort Worth, together with all the stables, yards, and grounds, all of the cars, mules, and harness, and all property whatsoever belonging to the Fort Worth Street Railway Company, and used in and about the operation of its line of street railway, except a lot of 95 by 115 feet, in block 52, in the city of Fort Worth, on the southwest corner of Rusk and Third streets, to have and to hold said property hereby leased and demised unto said North Side Railway Company and its successors, from the 1st day of December, 1888, during the full term of five (5) years then next ensuing, for the sum of five hundred dollars ($500) a month.

"2. That the said North Side Railway Company hereby covenants and agrees that it will, during the said term of five years, pay to said

Fort Worth Street Railway Company the said sum of five hundred dollars per month for the rent of said leased and demised property.

"3. That the said North Side Railway Company hereby covenants and agrees to indemnify and save harmless said Fort Worth Street Railway Company from all actions, costs, charges, and payments that may arise in any manner from the operation and maintenance of said lines of street railway hereby leased, at any time during the continuance of this lease.

"4. That the parties hereto hereby agree that the value of the cars, mules, and harness embraced in this lease is the sum of nine thousand five hundred dollars ($9500), and said North Side Railway Company hereby covenants and agrees that, at the expiration of this lease, should it not before said time elect to purchase said property, as is hereinafter provided, it will turn over to the Fort Worth Street Railway Company the same amount of mules, cars, and harness as it shall receive under this lease, or other property, to be mutually agreed to by the parties to this contract, of equal value, and that the same shall be of the value of nine thousand five hundred dollars when turned over.

"5. That it is hereby covenanted and agreed, that should said North Side Railway Company make any change or alteration in or about said leased line of said railway, the same shall be done at the expense of said North Side Railway Company, except said change or alteration is authorized by the Fort Worth Street Railway Company in writing. If any change shall be so authorized by said Fort Worth Street Railway Company, then the actual cost of same shall be paid for by said Fort Worth Street Railway Company at the expiration of this lease.

"6. That said Fort Worth Street Railway Company hereby covenants and agrees, that in the event the North Side Railway Company shall at any time during the continuance of this lease elect to purchase said leased property, it, the said Fort Worth Street Railway Company, shall, upon request of the said North Side Railway Company, sell and convey unto the said North Side Railway Company all of said leased property, at and for the sum of one hundred thousand dollars ($100,-000), and in case such sale is made, from and after its completion this lease shall cease to operate, except as to the statement of past matters arising out of this lease. Said Fort Worth Street Railway Company shall so sell and convey said property free from any and all incumbrances.

"7. That said North Side Railway Company hereby covenants and agrees to turn over to said Fort Worth Street Railway Company its line of street railway in as good average condition as when received by it.

"8. That it is hereby covenanted and agreed between the parties hereto, that in the event the said North Side Railway Company shall make default in the payment of the rent heretofore stipulated to be paid, for two consecutive months, said Fort Worth Street Railway Company shall have the right to terminate this lease, upon giving to

said North Side Railway Company ten days notice in writing of its intention to so terminate same, and upon expiration of said ten days notice this lease shall terminate at once, and said North Side Railway Company shall forthwith surrender to said Fort Worth Street Railway Company all of said leased property, and shall comply with the requirements of articles fourth and seventh of this lease.

"9.   Should any difference arise between the parties hereto in reference to any matter to which this instrument relates, such difference shall be adjusted by two arbitrators.   Said arbitrators shall be chosen by said parties, each to select its arbitrator, and should the arbitrators so chosen fail to agree, they shall select a third arbitrator.   The agreement of said two arbitrators selected by the parties, or, if they disagree, the agreement of one of them with the said third arbitrator, shall constitute the decision of the matter in dispute, and such decision shall be final and conclusive of the matter in dispute.

"10.   That said North Side Railway Company shall have, and the said Fort Worth Street Railway Company hereby grants to it, the authority to use during the continuance of this lease the name of said Fort Worth Street Railway Company in prosecution or defense of any suit that may hereafter be instituted in favor of or against said Fort Worth Street Railway Company, by reason of any matter connected with the operation or maintenance of said line of street railway.   But this right so granted shall in nowise entail any cost or expense upon the said Fort Worth Street Railway Company.

"11.   That said North Side Railway Company hereby covenants and agrees to pay any and all taxes that may be assessed or charged against the said Fort Worth Street Railway Company on the above leased property on and after December 1, 1888, during the existence of this lease.

"12.   That said North Side Street Railway Company hereby covenants and agrees to indemnify and save harmless said Fort Worth Street Railway Company against all liabilities the latter may incur by a bond of indemnity heretofore executed by it to the Texas & Pacific Railway Company.

"13.   That said Fort Worth Street Railway Company hereby covenants and agrees to prosecute, as long as there is any reasonable prospect of success, a suit it has in the District Court of Tarrant County against the Queen City Railway Company, or any persons or corporation that may have succeeded to or acquired the right of property of the said Queen City Street Railway Company.

[Signed]      ",FORT WORTH STREET RAILWAY COMPANY.

"By K. M. VAN ZANDT, Pres.

"Attest:  J. P. SMITH, Sec.

"NORTH SIDE STREET RAILWAY COMPANY.

"By W. A. HUFFMAN, Pres.

"A. T. BYERS, Sec."

Thereafter, on March 30, 1889, the following ordinance was duly passed by the city council of the city of Fort Worth:

"Section 1. Be it ordained by the city council of Fort Worth, that all the rights, privileges, and franchises heretofore granted to the Fort Worth Street Railway Company, by an ordinance passed on the 15th day of July, 1874, and entitled an ordinance granting certain privileges to the Fort Worth Street Railway Company, so far as the same grants the right to construct and operate not more than two (2) lines of street railway along Main street and its extensions, provided no wire shall be less than twenty-five feet from the ground across the Texas & Pacific Railway tracks, and further, that the said company be required to conform to grade from Fifteenth to Front streets, as heretofore ordered, be and the same is hereby in all respects confirmed for the use of the Fort Worth Street Railway Company and the lessee of its rights and privileges and franchises; and be it further ordained, that any track laid or to be laid by said company shall be on a grade given by the city engineer.

"Sec. 2. It is understood that the Fort Worth Street Railway Company and its said lessee shall in all respects obey and conform its actions to the ordinances of the city of Fort Worth regulating street railroads, now in force or hereafter to be in force, and that the maximum rate of fare shall never exceed 5 cents per passenger; and be it further ordained, that at the crossing of the Texas & Pacific Railway Company's tracks the street car company shall put in a safe and suitable crossing, and said street railway company shall use all reasonable precaution to insure safety to passengers by maintaining a watchman, or by having conductors, if they are used, to precede all cars with a red flag by day or red light at night; and be it further provided, that any other street railway company may use the tracks across said Texas & Pacific Railway Company's tracks, by paying their pro rata of costs of construction of said crossing.

"Sec. 3. This ordinance to take effect and be in force from and after its passage."

After the North Side Company became lessee as above provided, it laid a double track in place of the single one previously used by the Fort Worth Company (but over the protest of the president of the latter company), and continued till long after the date of the accident to operate under the lease a line of street railway over said double track from the public square, along Main street, to the Texas & Pacific or Union Depot.

Between the foot of Main street and the Union Depot is the Texas & Pacific reservation, the property of the Texas & Pacific Railway Company, over which the street car line ran, including the place of collision. Here there was no regularly established street of the city, but the way of public travel was alongside or over the street car track at the point of collision, and there had not hitherto been any other way of travel from the city to the Union Depot.

As a result of the collision, the wife of appellee received painful injuries about the head, neck, and shoulders. After describing the collision, her bodily injuries, and consequent suffering, she testified: "I was so frightened when I was first hurt, both at the collision, and then my child was badly hurt."

The amount of the recovery, $1125, was not excessive.

*Conclusions of Law.*—1. The petition charged that the car upon which the injured wife was a passenger, as well as that of the Texas & Pacific Company, was so carelessly run and operated that the collision resulted, giving time, place, and in part the circumstances, though not the details of the accident. It was clearly good on general demurrer, and quite as specific as the exception relied on as a special exception to test its sufficiency, to wit, that the acts of negligence were not "sufficiently specified." Railway v. Granger, 85 Texas, 574.

2. The definition of negligence complained of in second assignment was substantially correct, but if otherwise, this feature of the charge would not require the judgment to be reversed, because the negligence of the North Side Company was too well established to admit of any but an affirmative finding on that issue.

3. There was no plea over against the Texas and Pacific Company, and no case made against it; hence no error in instructing a verdict in its favor.

4. The objection to the charge, that it authorized a recovery for the mental suffering of plaintiff below, the husband, has been obviated by a correction of the record. Thus corrected, it instructed the jury to assess the damages "at such sum as would be a fair and reasonable compensation for such physical injuries and suffering as plaintiff's wife sustained from the collision, and for such mental suffering as they might believe from the evidence plaintiff's wife sustained by reason of the collision."

As a general statement of the measure of recovery, the charge was correct. If appellant desired a more definite statement, it should have requested it. Besides, the opinion of the Supreme Court in the Trott case, 86 Texas, 412, is not believed to be applicable to the case of a female passenger, who is both bruised and frightened in a railway collision. Railway v. Corley, 29 S. W. Rep., 231. See also Yoakum v. Kroeger (Fourth District), 27 S. W. Rep., 953.

The charge expressly directed the jury not to consider the matter of the child's injuries in assessing the damages.

5. The foregoing conclusions dispose of all the assignments of error except the fourth, fifth, and seventh, raising the most important question at issue—whether liability of the Fort Worth Street Railway Company was a necessary result of that of the North Side Railway Company.

That a company chartered to construct and operate an ordinary railroad can not by a lease to another company, without permission of the

Legislature, absolve itself from the obligations which its charter, the law, and the nature of its business place it under to the public, is too well settled, both in and out of this State, to require the citation of authority. Whether such lease by legislative permission, in the absence of a provision to that effect, will absolve it, does not seem to be so well settled; but the negative of the proposition is sustained by very high authority, and seems to have received the sanction of our Supreme Court. In Railway v. Morris & Crawford, 68 Texas, 59, Justice Gaines used this language: "Nor will a lease duly authorized by law release the company from a failure to discharge its charter obligations, unless the law giving the power contains a provision to that effect." The following cases support this view with cogent reasoning: Harmen v. Railway, 28 S. C., 401 (13 Am. St. Rep., 638); Braslin v. Horse Railway, 145 Mass., 64; Abbott v. Horse Railway, 80 N. Y., 27 (36 Am. Rep., 572).

The remaining question is, do these rules have application to companies chartered, whether by general or special law, to operate street car lines in cities and towns? And this question, we think, both on reason and authority, should be answered in the affirmative.

The principle underlying the adjudications on this subject is well stated by Justice Miller, in Thomas v. Railway, 101 United States, 71, to be, "that where a corporation, like a railroad company, has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions, which undertakes, without the consent of the State, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the State, and is void as against public policy."

The two cases cited above from Massachusetts and New York, as does also that of Rickets v. Railway (85 Alabama, 601), 5 Southern Reporter, 353 (and doubtless others), apply this principle to street car companies. See also Street Railway Law (Booth), sections 425 and 426. At section 12, the author of the work last cited says: "The grant of the right to maintain in the public highway permanent tracks not necessary to its use in the ordinary mode of travel, and to propel cars thereon, and to demand toll, is in derogation of common right; hence its source can be found only in the sovereign power of the State," etc. Mr. Elliott likewise lays it down, that roads or streets can not be occupied by street railway tracks without legislative sanction, but that it is not necessary that the authority be conferred by direct grant. Like other powers over the streets, it may be delegated to municipal corporations, but such use of the streets can be licensed only for public purposes. Elliott on Roads and Streets, 562–565.

While our statutes undoubtedly confer on such bodies very extensive powers over the streets, it is not entirely clear that the power to absolve

from charter obligations has been conferred. But, as already seen, we need not decide this question, because the ordinance quoted above, if construed as permitting the lease (which may be doubted—see Thomas v. Railway, supra, for legislative enactment of similar import construed not to grant such permission), did not purport to do more. The provision in the lease itself of indemnity to the lessor by the lessee company indicates that, except as between the companies, the obligation to the public originally assumed by the Fort Worth Company was understood to still rest on it, and it should not be inferred that the city council interpreted it more favorably to the lessor than was done by the parties themselves. A similar provision was so interpreted in both the Abbott and Braslin cases, supra.

In deriving the handsome revenue of $500 per month for the valuable franchise conferred upon it by the State, whether directly or indirectly, the Fort Worth Company, in order to escape the consequent obligation to render to the public a suitable return for the valuable privilege thus enjoyed, should have clearly shown not only that the city council was empowered to so release it, but that it had in fact done so. This, we think, it has failed to do.

The further contention is urged, that because the place of the collision was not on Main street, but on land owned by the Texas & Pacific Company, between Main street and the depot, the foregoing principles are inapplicable; but to this we can not agree. In granting to the Fort Worth Company valuable rights and privileges on Main street, the condition or obligation was imposed of operating for public convenience a street car line between the public square and the Texas & Pacific depot. The place of the accident was in the city, and on the appointed journey, and was thus a part of the entire line operated in transporting passengers to and from the depot. It was also covered by the terms of the lease, which included the entire line.

The fact that the lessee company abandoned the old single track and put down a double track, as it had the right to do under the five year's lease, was wholly unimportant.

The judgment is affirmed.

*Affirmed.*

Delivered February 20, 1895.