## BRUYERE et al. v. LIBERTY NAT. BANK OF WACO. (No. 32.)

(Court of Civil Appeals of Texas. Waco.
March 27, 1924. Rehearing Denied
June 12, 1924.)

**1. Attachment ⬅️145—Writ need not be attested by clerk as clerk of court.**

A writ of attachment was not required to be attested by clerk as clerk of the Seventy-Fourth judicial district, McLennan county, in view of Rev. St. art. 240, Acts 1893, c. 46, and Acts 1915, c. 3 (Vernon's Ann. Civ. St. Supp. 1918, art. 30, subds. 19, 54, 74), since court takes judicial notice that McLennan county has three district courts and but one clerk, who performs all duties pertaining to clerkship of each of such courts.

**2. Attachment ⬅️153—Writ held to advise levying officer when, to whom, and where to return same.**

Writ of attachment fully advised levying officer when, to whom, and where to return same, where it was made returnable on a day which was in fact first day of regular term of Seventy-Fourth judicial district court of McLennan county, where suit was pending in view of Rev. St. art. 1700, without stating that it was first day of that term of that court.

**3. Attachment ⬅️145—Writ held sufficient, though body did not recite that county was in state of Texas.**

A writ of attachment was sufficient, though not stating in the body that proceedings were to be had before a district court for the state of Texas, but that they were to be had before district court in the county of McLennan, since court takes judicial notice that McLennan county is in Texas, and levying officers and parties would have same knowledge,

and writ ran in name of state of Texas, and was signed by clerk of a district court of Texas.

**4. Trial ⬅️120(2)—Remarks of counsel held not warranted by the evidence.**

Remarks of counsel that bank had loaned defendant money represented by note sued on, based on a financial statement delivered by defendant to bank showing more assets than liabilities, constituted reversible error; it not being warranted by evidence.

**5. Trial ⬅️133(1)—Counsel's error in making improper remarks becomes court's error, where failing to instruct jury to disregard.**

Where court fails to instruct jury not to consider harmful remarks of counsel, counsel's error becomes error of court.

**6. Trial ⬅️120(2)—Remarks of counsel held improper, as not warranted by the evidence.**

Remarks of counsel that defendant's claim of solvency was untrue, because he had nothing but worthless stocks and bonds, which were secreted and could not be found by any process, and that he had nothing that could be reached for his debts, constituted reversible error, in view of Rev. St. arts. 254, 255, 275, 276, 3742, 3743, not being warranted by evidence, and being appeal to jury to decide issue on what they were supposed to know, aided by counsel's suggestion, and which was not a matter of common knowledge.

**7. Appeal and error ⬅️1031(5)—When natural consequence of counsel's prejudicial remarks presumed.**

Where counsel's remarks to jury are prejudicial, and court's action refusing to instruct jury not to consider them is reasonably calculated to cause erroneous findings on their part on vital issues, natural consequence of such remarks should be and is presumed.

**8. Appeal and error ⬅️1031(5)—Whether natural consequence of counsel's prejudicial remarks should be presumed depends on facts, and involves trial court's discretion.**

Whether natural consequence of counsel's prejudicial remarks to jury should be presumed depends on facts of each case, and involves exercise of certain amount of discretion by trial court.

**9. Bills and notes ⬅️357—Pledgee held a bona fide holder of accommodation note to extent of accommodated party's indebtedness to it.**

Where a note was executed for accommodation of another and for a designated purpose, and was diverted and pledged by accommodated party for its indebtedness on notes to pledgee, who, when accepting accommodation note, was ignorant of its purpose, pledgee was bona fide holder of note to extent of accommodated party's indebtedness on a note to it, with interest and attorney's fees, if its note so provided.

**10. Pledges ⬅️30(2)—Rights of pledgee holding accommodated party's note as collateral security stated.**

If pledgee held an accommodated party's note diverted from a designated purpose as

collateral security only, it might sue on it, and in absence of applicable defense collect full amount according to its terms, and out of proceeds pay accrued indebtedness, and hold surplus, if any, in trust for real owners.

**11. Bills and notes ⬤⟶497(3)—Pledgee, applying accommodation note wrongfully diverted to secure indebtedness, held bound to establish existence of secured debt.**

Where a note was executed for accommodation of another and for a designated purpose, and was diverted and pledged by accommodated party for its indebtedness on notes to pledgee, and pledgee learned this fact while holding secured debt, he was bound to establish existence of his secured debt, and that it was unpaid, and amount still owing, and burden of proof on these matters was on him.

**12. Appeal and error ⬤⟶882(3)—Requested charge held to estop defendants from urging error as to principal of indebtedness, but not as to attorney's fees and interest.**

In an action on notes which had been diverted and pledged by accommodated party for its indebtedness on notes to pledgee, defendant's requested charge, which was given, that in estimating maker's indebtedness jury should not consider accommodation note in full, but only indebtedness owing from accommodated party to pledgee, was invited error, and constituted an estoppel from urging error as to principal of such indebtedness, but not as to interest and attorney's fees thereon.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Action by the Liberty National Bank of Waco against E. H. Bruyere and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded. •

Witt, Terrell & Witt, of Waco, for appellants.

Bryan & Maxwell, of Waco, for appellee.

SPIVEY, J. This is a suit by appellee against appellant E. H. Bruyere upon certain promissory notes, some of which were executed by him alone, and some by him and other persons not necessary to mention. Appellant Mrs. W. A. Bruyere was made a party defendant at the beginning of the suit, and an attachment was issued at the same time and levied upon certain lots in the city of Waco. Mrs. Bruyere claimed two of these lots as her separate property by virtue of a parol gift made to her by her husband in 1918, and of the material and labor with which thereafter the improvements were erected, all of which was prior to the existence of any indebtedness of her husband disclosed of record herein. She also pleaded that thereafter, on January 1, 1921, pursuant to such parol gift, her husband executed and delivered to her a warranty deed to said two lots, and that at said time he was solvent. The evidence shows that the indebtedness sued upon came into existence after the parol gift of both the lots and the improvements erected thereon, but prior to the making and delivery of said deed.

Appellee also set up that Mrs. Bruyere was claiming the two lots under and by virtue of the above-mentioned deed to her, but that the husband in fact had title and had represented to appellee that he owned said two lots, and that appellee's loans were made, or were renewed upon the faith of these representations, and that the deed of gift to the wife was executed while the husband was insolvent, and was therefore void as to his creditors. Appellee therefore prayed judgment for its debt against Mr. Bruyere, and for foreclosure of its attachment lien against both Mr. and Mrs. Bruyere upon said two lots, together with other property shown by the return on the writ of attachment. Mrs. Bruyere prayed judgment for the title and possession of the two lots so claimed by her.

Appellants assign error upon the refusal of the court to quash the attachment proceeding in response to their motion therefor. No objection is made to the affidavit of bond. Their first objection to the writ is that, at the time of the issuance and levy, the suit was pending in the Seventy-Fourth judicial district court of McLennan county, and that the writ as issued by R. V. McClain "simply shows that it was issued by him as clerk of the district court of McLennan county, Texas, and does not show that same was issued and officially attested by him as clerk of. the Seventy-Fourth district court in and for McLennan county, Texas"; second, that said writ further provides "that the same (referring to the property to be attached) may be liable to further proceedings thereon to be had before the district court in Waco, in the county of McLennan, on the 8th day of August, 1921, and does not show that said property was liable to further proceedings thereon to be had before the Seventy-Fourth district court in and for McLennan county"; and, third, "because it does not state before a district court for the state of Texas, but simply says to be had before the district court in the county of McLennan, without stating 'in the state of Texas.'"

Counsel for both the appellants and appellee agree in their statement that the suit was originally filed in the district court of McLennan county for the Seventy-Fourth judicial district, and was pending there when the writ was issued, and that later the case was transferred to the Nineteenth district court, and was there tried. The writ is as follows:

"The State of Texas to the Sheriff or Any Constable of McLennan County—Greeting:

"We command you that you attach forthwith so much of the property of E. H. Bruyere and Mrs. W. A. Bruyere, if to be found in your county, repleviable on security, as shall be of

value sufficient to make the sum of eighteen thousand five hundred and no/100 dollars, and the probable costs of suit, to satisfy the demand of the Liberty National Bank of Waco, a banking corporation, and that you keep and secure in your hands the property so attached, unless replevied, that the same may be liable to further proceedings thereon, to be had before the district court in Waco, in the county of McLennan, on the 8th day of August, 1921, when and where you shall make known how you executed this writ.

"Witness my hand and the seal of said court at office in the city of Waco, this 22d day of June, 1921. Attest: R. V. McClain, Clerk District Court, McLennan County, Texas. [Seal.]"

It bears the indorsement of the same style and number as the other papers in the case and the date of its issuance.

[1, 2] Article 240 of the Revised Statutes provides that judges and clerks of the district and county courts and justices of the peace may issue writs of original attachment, returnable to their respective courts, under certain prescribed conditions. McLennan county, as we judicially know, has three district courts, and but one clerk for the three, who is required to perform all of the duties pertaining to the clerkship of each of said courts. Acts Reg. Sess. 1893, c. 46; Acts Reg. Sess. 1915, c. 3 (Vernon's Ann. Civ. St. Supp. 1918, art. 30, subds. 19, 54, 74). Under the law existing at the time this suit was filed and writ issued, a regular term for the Seventy-Fourth judicial district, composed of McLennan county alone, was required to be held beginning Monday, August 8, 1921, of which fact both the clerk and the officer levying the writ, as well as appellants, were charged with knowledge, and the writ accordingly directs the officer to make return on that date, without, however, stating that it is the first day of that term of that court. Under the law no other district court of McLennan county was provided to begin a regular term on that date, and this the clerk and the levying officer and appellants must be held to have known also. By R. S. art. 1700, the clerk is made custodian of all papers deposited in his office with him in his capacity as clerk, and there is no law, nor any practice known to us, providing any mode of return of a writ to a district or county court, except by delivery to its clerk. In the case of citations, the law concerning which merits and receives a strict construction, article 1852 of the Statutes requires that the citation shall command the officer to summon the defendant "to appear * * * at the next regular term of the court, stating the time and place of holding the same"; and it has been held thereunder that a citation which states the time and place of holding the next regular term of the court is sufficient, without containing the expression "at the next regular term of the court" (Cave v. City of Houston, 65 Tex. 619), and that a citation is sufficient where the date on which it is made returnable corresponds to the date of the first day of the next term of the court (De Walt v. Zeigler, 9 Tex. Civ. App. 82, 29 S. W. 61). For the above reasons and facts, we think that the writ was not required to be attested by the clerk as clerk of the Seventy-Fourth judicial district court, and that it fully advised the levying officer when and to whom and where to return the same, and that it was made returnable on the first day of the next regular term of the Seventy-Fourth judicial district court in and for McLennan county, where the suit was pending.

[3] As to the third objection, that the writ does not state in the body of it that the proceedings are to be had before a district court "in the state of Texas," the Constitution and the statutes require that the style of all writs and process shall be in the name of the state of Texas, and the Legislature, in prescribing the form of writ of attachment, does not provide that it show or contain the name of the state in the body of the writ. The clerk would have no authority to issue such writ to any officer outside of the state, nor would any officer outside of the state have authority to execute such writ, even if directed to him. Generally speaking, statutes of a state have no extraterritorial force, and a writ, the creature of them, can rise no higher. In the case of citations it has been held that a citation directed to the sheriff of Caldwell county, to be published in a named newspaper, summoning the defendant to appear before a named justice of the peace at his office in the town of Lockhart, is not void, and that the court knows judicially that Lockhart is the county seat of Caldwell county, and that the citation was good, although "Caldwell county" was not written after "Lockhart." Hambel v. Davis, 89 Tex. 256, 34 S. W. 439, 59 Am. St. Rep. 46. This court judicially knows that Waco is the county seat of McLennan county, in the state of Texas, and the levying officer and appellants would have the same knowledge. The writ runs in the name of the state of Texas, and is signed by the clerk of a district court of the state of Texas, and was sufficient, although the body of it did not show or recite that McLennan county was in the state of Texas.

The court submitted three issues; the first two being kindred and substantially as follows: Whether or not E. H. Bruyere, at or about the time stated above, made the parol gifts to his wife—and the third, whether or not on January 1, 1921, the date of the written conveyance to Mrs. Bruyere by her husband, he was solvent. The jury answered each of the three issues in the negative, and, upon the answers, and the facts found by the court, judgment was rendered in favor of appellee for its debts, and against both appellants for foreclosure upon the two lots claimed by Mrs. Bruyere. By several assignments,

appellants complain of certain remarks made to the jury by opposing counsel, claimed to be improper and prejudicial, and of the refusal of the court to instruct the jury not to consider them.

During the trial appellee introduced in evidence a financial statement delivered by E. H. Bruyere to appellee, showing the former's financial condition; the same showing more assets than liabilities, and containing, among other property, the two lots in controversy. During the closing argument of appellee's counsel, he stated to the jury that the bank had loaned E. H. Bruyere the money represented by the notes sued upon, based upon said written statement. Counsel for appellants objected to the statement of appellee's counsel upon the ground that there was no evidence to support it, and that it was prejudicial to appellants, and asked the court to instruct the jury not to consider it, which request was refused and proper exception reserved.

[4, 5] After careful consideration of the statement of facts, we find that both of these objections were well taken. It appears that the financial statement had been prepared by Bruyere for another purpose, and, on the bank asking for it, Bruyere gave it a copy of the one so prepared. It was dated August 12, 1920. The date of delivery of copy to the bank does not definitely appear, except that it was some time in the late summer or fall of the same year. But there is no dispute in the evidence but that at the time it was delivered appellee's vice president asked Bruyere for a deed of trust upon the two lots in controversy, and Bruyere declined to give it, stating that the lots belonged to his wife. This was before January 1, 1921, the date of his deed conveying the lots to his wife. No money was loaned by the bank to Bruyere after the statement was furnished, and, if any extensions of previous indebtedness were given, such extensions were after the above-mentioned conversation, in which Bruyere advised the bank that the two lots belonged to his wife. Nor is there any evidence that the bank either loaned any money or extended any loan based upon the financial statement, although it did extend them after the financial statement was delivered. Nor is there any evidence that the bank knew or had any information that the Bruyeres owned or were claiming to own said two lots, save such constructive knowledge as is afforded by the deed records, and there is no evidence that the bank actually knew of this. Nor is there any evidence that Mrs. Bruyere ever had any transaction with the bank, or that the bank knew she was claiming the two lots, until the above-mentioned conversation between Bruyere and the bank's representative, nor that Mrs. Bruyere ever rendered the lots for taxation, nor that she knew anything concerning such financial statement, nor of its delivery to the bank.

Both Bruyere and Mrs. Bruyere testified to the facts of the parol gift. The evidence against their position was the above-mentioned financial statement, and a tax rendition made by Bruyere for 1920 (also subsequent to the claimed parol gift), showing these two lots among his other real property. Appellants are also complaining of the findings of the jury upon each of the three issues.

Appellee claims that counsel's remarks to the jury had support in the evidence, and also that his remarks were proper and pertinent as affecting the credibility of Mr. Bruyere as a witness. We think his remarks did tend to affect the credibility of Bruyere before the jury, and that, too, concerning a material issue. If Bruyere had, by his financial statement and his silence at the time, caused the bank to lend him money or extend him credit, and thereafter had (as he did) testified that he had previously given a portion of that property to his wife, who, with the aid of his testimony as a witness, was now claiming them, the jury would not have been very favorably impressed with his honesty or fair dealing, nor with his credibility as a witness. If they believed the statement of counsel, they would have been prejudiced against him and would have been biased in favor of the bank, who had thus been imposed upon. The remarks were improper, because not warranted by the evidence, and the court should have instructed the jury not to consider them, and the error of counsel in making the remarks became the error of the court by such refusal. G., C. & S. F. Ry. v. Butcher, 83 Tex. 309, 316, 18 S. W. 583.

The categorical statement above, that the remarks of counsel had no support in the evidence, is arrived at not without a careful examination of the entire testimony of both E. H. Bruyere and the vice president of appellee; but, if our conclusion here is correct, the fact of difficulty in arriving at it affords no reason for not holding it erroneous. On the contrary, the jury may have had difficulty in discovering it also, and evidently the court did not discover it, else he doubtless would not have permitted the argument to stand, and also doubtless counsel would not have made the statement, unless he had believed his position was supported by the evidence.

[6] By bill of exceptions and assignment appellants also complain of the following remarks of counsel for appellee in his closing argument, and of the refusal of the court to instruct the jury not to consider them. The remarks were as follows:

"Think of the claim of solvency in the face of this record, that this defendant on January 1st had nothing but these worthless stocks and bonds. You gentlemen know that the sheriff could not have located one of them with a detective agency; they would have been in locked boxes and otherwise secreted, so that they

could not have been found by. any process. Gentlemen of the jury, he had nothing on January 1st that could be reached for his debts."

Much of E. H. Bruyere's assets consisted of stock in corporation and bonds or stock in joint-stock companies, and the issue whether he was solvent at the time he conveyed to his wife the lots in controversy was sharply ·contested, and complaint is now made of insufficiency of the evidence to support the finding of the jury. We think the argument was improper and prejudicial, for the reason that there was no evidence·that the jury "knew" that the sheriff could not have located them, nor that they would have been in locked boxes or otherwise secreted, nor that they could not be found by some character of process, nor that they could not be reached for his debts; yet the conclusion sought to be conveyed and impressed was that they were worthless for these stated facts, and for the further reason that it was an appeal to the jury to decide the issue upon what they were supposed to know, aided by the suggestion of counsel, and apart from the evidence, and upon which it cannot be said that whatever knowledge they had was of the character supposed to be possessed by mankind in general; it was not a matter of common knowledge. Fort Worth, etc., Ry. Co. v. Spear (Tex. Civ. App.) 107 S. W. 613; Houston & T. C. Ry. v. Maxwell, 61 Tex. Civ. App. 80, 128 S. W. 160. Counsel would know ·that such stock could be reached by process. R. S. arts. 254, 255, 275, 276, 3742, 3743. Jurors, however intelligent, might not.

[7, 8] We have concluded that the remarks shown in the two assignments referred to were prejudicial, and that the action of the court in refusing to instruct the jury not to consider them was reasonably calculated to cause erroneous findings on the part of the jury upon vital issues, and, if so, the natural consequence of the remarks should be and is presumed. Raney v. Houston L. & P. Co. (Tex. Civ. App.) 153 S. W. 178. It is a matter the decision of which in a large measure depends upon the facts of each case, and involves the exercise of a certain amount of discretion on the part of the court. Houston & T. C. Ry. v. Long (Tex. Civ. App.) 219 S. W. 212; Weisner v M., K. & T. Ry. (Tex. Com. App.) 207 S. W. 904. That the argument was improper and prejudicial, see the following cases: Houston Ice & B. Co. v. Harlan (Tex. Civ. App.) 212 S. W. 779, 785; Western Indemnity Co. v. McKechnie (Tex. Civ. App.) 214 S. W. 456; Dean v. Dean (Tex. Civ. App.) 214 S. W. 505; Houston v. Scarborough (Tex. Civ. App.) 221 S. W. 703; Pace Gro. Co. v. Guynes (Tex. Civ. App.) 204 S. W. 794; Southern Pacific Co. v. Miller (Tex. Civ. App.) 207 S. W. 554; San Antonio Traction Co. v. Lambkin (Tex. Civ. App.) 99 S. W. 574.

Other remarks of counsel and the refusal of the court to exclude them, and other assignments of error relating to the judgment as between E. H. Bruyere and appellee, are complained of. We have carefully examined these assignments in the light of the record, and are of opinion that they do not show prejudicial or reversible error, except as to the assignment next following.

[9] Appellants also complain that judgment was erroneously rendered against E. H. Bruyere upon one of the notes sued on. This note was in the principal sum of $7,000, and was executed by E. H. Bruyere and another as an accommodation note for the benefit of the Ryan & Fisher Refining & Production Company, under an agreement between the parties that it was to be used for a designated purpose. Instead of being used by the accommodated party for that purpose, it was pledged to appellee for a note of the accommodated party then held by appellee, and for an additional amount then loaned; these two amounts aggregating $4,150. At the time appellee accepted the $7,000 note under the circumstances stated above, it had no information concerning the purpose for which it was issued, nor that the Ryan & Fisher Company, in pledging it to appellee, was thereby wrongfully diverting it; but it learned these facts in the fall of 1920, and while it still held the notes of the Ryan & Fisher Company. Appellee therefore, to the extent and amount of $4,150, and for interest and attorney's fees, if its principal notes so provided, was a bona fide holder for value of the $7,000 note.

Appellants contend there was no proof whether appellee still held its principal indebtedness, and no proof that it had not been paid, and no proof of the amount owing upon it. This contention is supported by the record. The notes of the Ryan & Fisher Company were not offered in evidence, nor accounted for, and there was no evidence showing that they had not been paid, nor whether they provided for attorney's fees. The amount adjudged in so far as the $7,000 note is concerned, was $4,631.40 principal and interest to date of judgment, October 23, 1922, with interest thereon at the rate of 6 per cent. from date of judgment, plus $463.14 attorney's fee; so that it is evident interest was included in the judgment at some rate and for some period of time.

[10] Notwithstanding it appeared on the trial that appellee held the $7,000 note as collateral security only, it nevertheless had the right to sue upon it, as would any other holder of negotiable paper, and, in the absence of applicable defenses, to collect the full amount of ·such collateral note according to its terms, and, out of the proceeds, pay· the secured indebtedness, and hold the surplus, if any, in trust for the real owner. Williams v. Lumpkin, 74 Tex. 601, 12 S. W. 488; Thomson v. Findlater Hardware Co. (Tex. Civ. App.) 156 S. W. 301; Forty Acre Co. v. Bank (Tex. Civ. App.) 111 S. W. 417;

Larkin v. Dawson, 37 Tex. Civ. App. 345, 83 S. W. 882; Sanderson v. Railey (Tex. Civ. App.) 47 S. W. 667.

[11] But when it was made to appear, as was done by the pleadings and proof, that the $7,000 note was given for the accommodation of the person for whose note it was held as security, and that such accommodation note had been wrongfully diverted, and that appellee learned this fact while still holding the secured debt, then appellee was bound to establish the existence of his secured debt, and that it was unpaid, and the amount still owing, and the burden of proof of these matters was upon appellee. Iowa City Bank v. Friar (Tex. Civ. App.) 167 S. W. 261; Wright v. Hardie, 88 Tex. 653, 32 S. W. 885; Handley v. Bank (Tex. Civ. App.) 149 S. W. 742; Harrington v. Claflin, 91 Tex. 294, 42 S. W. 1055; Wharton v. Bank (Tex. Civ. App.) 153 S. W. 699; Smith v. Cooley (Tex. Civ. App.) 164 S. W. 1050.

[12] But appellee replies by showing that during the trial appellant requested the court to submit a special charge (and it was given by the court) to the effect that in estimating the indebtedness of E. H. Bruyere at the time in question, the jury "should not consider the $7,000 note in full, but only the sum of $4,150 and interest due thereon to January 1, 1921." The action of appellants in requesting the charge constituted invited error (Jones v. Gammell Co., 141 S. W. 1048, 1052), and doubtless misled the jury in passing upon the issue of solvency of E. H. Bruyere, and the court in rendering judgment on the indebtedness. The estoppel arising from the requested charge would extend to the principal amount $4,150, but not to any interest or attorney's fees, and hence appellants are not precluded from urging their assignment to the extent of the latter two items, and as to them it is sustained.

On account of the matters herein pointed out as erroneous, the judgment is reversed, and the cause remanded.