**GM GOLD & DIAMONDS, LP,**

v.

**FABREGE CO., INC. & Uriel Rubinov, Individually, Defendants.**

**Civil Action No. H–07–1098.**

United States District Court,
S.D. Texas,
Houston Division.

April 13, 2007.

Robert J. Mackay, Attorney at Law, Missouri City, TX, for GM Gold & Diamonds, LP.

## Memorandum Opinion and Order

MILLER, District Judge.

Pending before the court is plaintiff's *ex parte* application for a writ of attachment and motion for entry onto defendants' property to enforce the writ. *See* Dkt. 3. After considering the plaintiff's application and motion, the evidence presented at the oral hearing, and the relevant law, the court finds that plaintiff's application and motion should be DENIED.

### I. Factual background

In its complaint, plaintiff alleges that defendants Fabrege Co., Inc. and Uriel Rubinov, both citizens of the state of New York, purchased a substantial quantity of diamonds on credit and have thus far failed to pay off the balance on their account. *See* Dkt. 1. GM Gold and Diamonds LP ("GMGD") claims that the principal balance owed is $224,860.03, with interest accruing under the contract at a rate of $110.88 per day, totaling $1,673.97 through April 2, 2007. Additionally, GMGD claims that it is entitled to statutory and contractual attorneys' fees in the amount of "at least $75,526.72." *See* Dkt. 1 at 7.

Plaintiff also has reason to believe, based on information regarding defendants' attempts to sell plaintiff's diamonds below cost, that Rubinov, a Russian immigrant, is planning to leave the United States and evade his creditors. Given the manifest exigencies involved, after filing the complaint plaintiff immediately moved for a writ of attachment and an order for entry onto defendants' premises to execute the writ. *See* Dkt. 3. Plaintiff believes that the diamonds to be seized are located in a safe at defendants' principal place of business at 62 W. 47th St., New York City, New York. Plaintiff claims that as the defendants have failed to pay, and still refuse to pay, their debt, plaintiff needs the provisional remedy of attachment to have any real chance of recovery in this case.

### II. Analysis

■ As a threshold matter, the court must satisfy itself that it has subject-matter jurisdiction over the attachment proceeding before examining the merits of the application. The Supreme Court has characterized this inquiry as a district court's "obligation," even on its own motion, when the parties have not initially raised this issue. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 1244, 163 L.Ed.2d 1097 (2006); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("Subject-matter limitations on federal jurisdiction ... keep the federal courts within the bounds the Constitution and Congress have prescribed."). If the district court determines that it lacks subject-matter jurisdiction, an examination of the merits is unnecessary, and plaintiff's relief must be denied. In this case, the court must analyze federal and state laws to determine whether it can exercise jurisdiction over personal property situated in New York.

Under Federal Rule of Civil Procedure 64, "[a]t the commencement of and during the course of an action, all remedies providing for seizure of person or property ... are available *under the circumstances and in the manner provided by* the law of the state in which the district court is held." Fed.R.Civ.P. 64 (emphasis added). Accordingly, this Texas federal court may exercise the provisional remedies available under Texas law, including the issuance of writs of attachment, *see* Tex. Civ. Prac. &

REM.CODE ANN. § 61.001 *et seq.* (Vernon 1997), in the same manner and to the same extent as a Texas state court could. In other words, the Southern District of Texas may only issue a writ of attachment ordering the seizure of certain personal property if a Texas state court could do the same.

In discerning the limits of the Texas courts' power in an attachment proceeding, a key delimiting factor is the state court's jurisdiction over the subject property. Attachment orders are essentially actions *in rem*, as they result in actual or constructive control over the res itself, rather than simply adjudicating personal rights to the subject property. *See e.g., U.S. Fidelity & Guaranty Co. v. Mueller,* 13 S.W.2d 430, 431 (Tex.Civ.App.-San Antonio 1928, writ ref'd) ("A proceeding by attachment is a proceeding in rem and places the property in custodia legis, subject to the ultimate disposal thereof by the court."). As such, attachment orders can reach only as far as a court can extend its *in rem* jurisdiction. Under traditional principles of jurisdiction, a court's *in rem* powers cannot extend beyond the state's borders, for "[t]he *basis of the jurisdiction* is the presence of the subject property within the territorial jurisdiction of the forum State." *See Hanson v. Denckla,* 357 U.S. 235, 246–247, 78 S.Ct. 1228, 1236, 2 L.Ed.2d 1283 (1958) (emphasis added) (citing *Rose v. Himely,* 8 U.S. 241, 4 Cranch 241, 277, 2 L.Ed. 608 (1808); *Overby v. Gordon,* 177 U.S. 214, 221–222, 20 S.Ct. 603, 606, 44 L.Ed. 741 (1900)); *see also Steele v. G.D. Searle & Co.,* 483 F.2d 339, 347 (5th Cir.1973) (citing *Hanson* for the proposition that "much still remains of both the old notions of territoriality and the ancient distinction between *in rem* and *in personam* actions when judgments are being made on the constitutional validity of state process"). Notably, the Supreme Court has emphasized that "[t]angible property poses no problem for the application of this rule[,]" because the situs of tangible property is generally easy to determine. *Hanson,* 357 U.S. at 247, 78 S.Ct. 1228. In short, attachment orders are proceedings whose jurisdiction extends no further than the territorial boundaries of the forum state. *Id.*

With these background principles in mind, it should not be surprising that each court which has decided the extraterritoriality issue has refused to give effect to attachment writs aimed at a res outside the territorial boundaries of the forum state.[1] What should be surprising, howev-

---

1. *See, e.g., Federal Deposit Ins. Corp. v. Rodenberg,* 622 F.Supp. 286, 288 (D.Md.1985) (rejecting plaintiff's argument that a federal court sitting in Maryland may "apply Maryland's attachment procedures extraterritorially to accomplish the objectives of Rule 64"; interpreting Maryland's attachment statute as authorizing attachment only within the territorial limits of the state); *Saltzman v. Indemnity Ins. Co.,* 274 N.Y.S. 806, 807 (Sup.Ct. 1934) (German resident "had no property on which a levy could be made within this jurisdiction"); *Stricklin v. Hodgen,* 172 S.C. 37, 172 S.E. 770, 772 (1934) (holding that "funds of the defendant ... which the attachment sought to reach, had been forwarded by telegraphic transmission beyond the limits of this state, to a point in Florida, before the at-tempted execution of the attachment warrant"; vacating attachment); *see also, e.g., Allstate Sales and Leasing Co. v. Geis,* 412 N.W.2d 30, 32–33 (Minn.Ct.App.1987) (noting that "[a] state court cannot attach assets located outside the state"); *ABKCO Indus., Inc. v. Apple Films, Inc.,* 39 N.Y.2d 670, 385 N.Y.S.2d 511, 350 N.E.2d 899, 901 (1976) (noting that "[t]angible personal property obviously has a unique location and can only be attached where it is.... [S]ome intangibles are deemed to have become embodied in formal paper writings ... and in such instances attachment depends on the physical presence of the written instrument within the attaching jurisdiction."); *Buckeye Pipe–Line Co. v. Fee,* 62 Ohio St. 543, 57 N.E. 446, 448 (1900) (stating that "[n]o question is or could be

er, is that even though the Texas legislature created the attachment remedy in 1864—during the U.S. Civil War—no Texas court has directly addressed the extraterritoriality issue in any reported opinion. *See* Tex. Acts 1864, p. 37.

Nevertheless, some Texas courts have alluded to the concept of extraterritoriality and have suggested that it is inapplicable to Texas attachment law. For example, in *Garland v. Shepherd*, 445 S.W.2d 602, 606 (Tex.Civ.App.-Dallas 1969, no writ), the court addressed the availability of attaching disputed shares of stock when the defendant is not a Texas resident. Although the court did not have occasion to decide whether the statute could reach a res outside Texas, the court intimated that Texas courts have no such power "Since the shares of stock are *in Texas*, they are subject to attachment under the express provisions of this statute." *See Garland*, 445 S.W.2d at 606 (emphasis added). In another Texas case, the Waco Court of Civil Appeals stated the following, also in dicta

> The clerk would have no authority to issue such writ [of attachment] to any officer outside of the state, nor would any officer outside of the state have authority to execute such writ, even if directed to him. Generally speaking, statutes of a state have no extraterritorial force, and a writ, the creature of them, can rise no higher.

*Bruyere v. Liberty Nat'l Bank of Waco*, 262 S.W. 844, 846 (Tex.Civ.App.-Waco 1924, no writ).

Although *Bruyere* and *Garland* are relatively old cases, they are still good law, and no court has ever contradicted their implied opposition to extraterritorial application. of the Texas attachment statutes. Thus, these decisions from two separate

courts of appeals suggest that Texas courts would not extend the writ of attachment beyond Texas's borders.

■ Perhaps tellingly, plaintiff never addressed these substantive issues of Texas law in its argument that this court has jurisdiction over the merchandise in New York. Rather, the plaintiff contends that the defendants have already consented to Texas jurisdiction and venue through the parties' contractual agreement. This argument, however, misses the mark. Contracting parties are indeed free to draft clauses in which one party waives any challenge to a court's personal jurisdiction over that party. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."). Generally speaking, this waiver permits the court to hear this dispute and issue a ruling that is *personally* binding on the defendants. Yet this limited waiver cannot confer jurisdiction *in rem* over personal property where it does not lie. Thus, plaintiff's argument is ultimately unavailing, and the court need not consider it further.

■ Moreover, even if the court wanted to construe the statute authorizing attachment broadly, an applicable canon of construction precludes such a reading. The Texas attachment statutes, created by legislative fiat, are in derogation of the common law and thus must be strictly construed. *See Fisher v. Jordan*, 116 F.2d 183, 185 (5th Cir.1940) (citing *Stuart v. Anderson*, 70 Tex. 588, 8 S.W. 295 (Tex. 1888)). The statutes are silent on the issue of extraterritoriality, and the court

made that property without the state, can by virtue of a process of attachment, be seized by

an Ohio officer, and, of course, such property could not be delivered into court").

should not infer any such unexpressed intent on behalf of the legislature. As Texas courts have suggested, and other state courts have held, the remedy of attachment has a well-defined territorial limit, and the court sees no reason to depart from this approach. Accordingly, the court holds that a Texas federal court, under the auspices of Rule 64, may not use the Texas attachment statutes to seize property beyond the territorial borders of this state. Plainly speaking, the legislature never intended for the writ of attachment to have such broad effect, and this court is bound by that intent as expressed in the applicable statutes. Consequently, plaintiff's application and motion for entry to attach personal property in New York cannot be sustained.

### III. CONCLUSION

While the plaintiff's plight clearly merits sympathy, the court simply lacks the power to grant the relief requested. To be sure, the court did not reach this conclusion easily. After considering plaintiff's motion and compelling testimony elicited at the recent hearing, the court acknowledges that the equities weigh strongly in plaintiff's favor. However, a writ of attachment is a remedy at law in which equity plays no part, and the law requires the denial of plaintiff's application. The court stresses that in difficult cases such as this one, it recalls Alexander Hamilton's resonating exposition of the power of the Third Branch

> The courts must declare the sense of the law; and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure for that of the legislative body.

THE FEDERALIST No. 78 at 396 (Alexander Hamilton) (Gary Wills ed., 1982). The court is always mindful of these words, for only then can it "govern according to the rule of law rather than whims of politics and personal preference." ROBERT BORK, THE TEMPTING OF AMERICA THE POLITICAL SEDUCTION OF THE LAW 318 (1990). The law applicable to this case leads to one inescapable conclusion Under Texas law, this court lacks any power to order the attachment of personal property situated in New York.

For the foregoing reasons, plaintiff's *ex parte* application for a writ of attachment and motion for entry (Dkt.3) are DENIED.

It is so ORDERED.