J. R. HARRINGTON ET AL. v. H. B. CLAFLIN & Co.

No. 587.—Decided December 2, 1897.

1. **Homestead—Mortgage by Deed and Reconveyance—Assignee—Collateral Security.**

A homestead was deeded to creditors who reconveyed for notes with vendor's lien reserved which they held as security for their debt—the transaction being in effect a mortgage—and these notes were transferred by the payees to their creditors, who took them, together with other property, as security for the payees' debts to them. Held, that in order to enforce the notes and lien such assignees must show what was due upon the debt for which they held the notes and what other security they held therefor, so as to appear equitably entitled to enforce such notes and lien to secure themselves. (P. 299.)

**2.　Same—Installment Notes—Dishonor of One—Notice as to all.**

The five notes so secured by lien on the homestead being on their face given as parts of the same transaction and in effect for installments of one common consideration, and the first being overdue when all were transferred to plaintiffs, they were charged with notice of the defense as to all the notes.　(P. 300.)

ERROR to the Court of Civil Appeals for the Fifth District, in an appeal from Hill County.

Claflin & Co. brought the suit and obtained judgment against Harrington and wife who carried the case by writ of error to the Court of Civil Appeals and upon affirmance of the judgment obtained writ of error from the Supreme Court.

*W. M. Flournoy* and *Jo Abbott*, for plaintiffs in error.

*Tarlton & Morrow*, for defendants in error.—Our statute, art. 265, Sayles' Civ. Stats., provides that should one obtain a negotiable note before maturity, by giving a valuable consideration, and without notice of any discount or defense against it, then he should be compelled to allow only just discounts against himself.　Each of the notes on which judgment was rendered was negotiable, each was obtained for value before maturity.　Did Claflin have notice of defense against the second, third, fourth or fifth notes?　If so, what notice and how obtained?　Do not each of these notes come within the provision of the statute quoted, which says that to charge the holders with defenses against the note between the original parties, he must have had notice of the defense against the particular note?　He must have had notice of defense against it.

The first note was taken after maturity.　That fact gave notice as to it under the statute cited, but that statute does not say that, if a purchaser for value acquires several notes at the same time and one is past due, he is charged with defenses existing between the original parties.　On the contrary the statute puts each note upon its own merits, and if it is acquired for value before it is due and without notice then the holder is protected.

We find no Texas authority bearing directly upon this subject.　The authorities of other States and text writers hold that where there are several notes given, as in this case, the fact that one of them is overdue and unpaid will not render the ones that are not due subject to defenses between the original parties when in the hands of an innocent purchaser.　1 Daniel, Neg. Inst. (3rd ed.), sec. 787; Boss v. Hewitt, 15 Wis., 260.

If it necessarily follows that if Harrington had a defense to one note he had a defense to all, then possibly the fact that the first note was overdue might have been sufficient notice to Claflin as to all the notes. But such is not necessarily the case.　Harrington might have had a defense to the first note, or to a part of it, in that he had paid it in full or in part, and have had no defense whatever to the other notes.　Claflin,

taking the first note, past due, took it subject to such defenses as Harrington might have against it.   The other notes Claflin obtained before maturity and without notice of any discount or defense against them; then Claflin should be compelled to allow only the just discounts against himself.   The principle we submit is discussed in the following authorities:   2 Daniel, Neg. Insts. (3rd ed.), 1506a; Cromwell v. County of Sac, 96 U. S., 51; Railway v. Sprague, 103 U. S., 756; State v. Cobb, 64 Ala., 127; Kelly v. Whitney, 45 Wis., 110, where it was held that the past due interest coupons attached to a note was not notice of defenses between original parties, and that a bona fide holder was protected.

The law is settled that the burden is upon the defendant to show notice.   Wright v. Hardie, 32 S. W. Rep., 885.

It is also settled that the purchase of the notes must be in bad faith in order to affect the purchaser with defenses between the original parties.   Wilson v. Denton, 18 S. W. Rep., 620.

BROWN, ASSOCIATE JUSTICE.—The defendants in error brought suit in the District Court of Hill County to recover of J. R. Harrington upon five promissory notes, each dated February 26, 1889, each for the sum of $947.70, with ten per cent interest from maturity and ten per cent attorney's fees in case the note was sued upon.   The notes became due respectively on November 15th of each of the following years: 1889, 1890, 1891, 1892 and 1893.   The plaintiffs also sought as against both defendants, who were husband and wife, to forclose a vendor's lien upon two hundred acres of land in Hill County, described in the petition.

Harrington and wife filed a general demurrer, a general denial, and specially pleaded that the two hundred acres of land for which the notes purport to have been given was, at the time they were executed and long before, the homestead of the said Harrington and wife, and that Lessing, Soloman & Rosenthal, the payees of said notes, knew that said land was the homestead of the said Harrington and wife, and that the plaintiffs in that suit had notice of the fact that the two hundred acres of land was the homestead, and had notice of such facts as would put a prudent man on inquiry.   They also claimed that the deed executed by them to Lessing, Soloman & Rosenthal was not intended as an absolute conveyance but merely as a mortgage.

Upon the trial in the District Court the judge instructed the jury in substance to find in favor of Claflin & Co. against J. R. Harrington for four of the said notes with interest and attorney's fees, and also against both defendants in favor of Claflin & Co. foreclosing the vendor's lien on the two hundred acres of land described.   The plaintiffs had dismissed their suit as to the first of the said notes.

From the findings of the Court of Civil Appeals of the facts and from the undisputed evidence we state the following as the facts relevant to the issue presented upon this writ of error:   In 1887 and for some time

prior thereto J. R. and T. N. Harrington were husband and wife and living upon the two hundred acres of land in controversy as their homestead, having no other at that time, and they have continued to reside upon the said land since that time, claiming no other homestead.

J. R. Harrington was a merchant in Hill County and was in debt to Lessing, Soloman & Rosenthal, of Waco, Texas, for merchandise, in about $1200, and desired to secure further advances from them. In order to secure the debt contracted and that which might be thereafter contracted, Harrington and wife executed a deed of conveyance to their son-in-law, H. L. Powers, for the two hundred acres in controversy, reciting the consideration of $6000 in notes signed by the said H. L. Powers, one for $2500 due October 1, 1888, and two notes, each for $1750 due respectively October 1, 1889 and 1890. The deed to Powers and the notes from him were dated in October, 1887, and the deed recorded October 19, 1887.

Harrington turned the notes of Powers over to Lessing, Soloman & Rosenthal as collateral security for what he owed them and for future advances to be made by them. Afterwards Harrington and Powers became partners in the mercantile business, and in 1889 Lessing, Soloman & Rosenthal became dissatisfied with the security they held and at their instance H. L. Powers and wife reconveyed the two hundred acres of land to Harrington on the 20th of February, 1889, reciting a consideration of $5 and the surrender of the notes given by Powers to Harrington, with a release of a vendor's lien. This deed and release were recorded February 22, 1889.

On February 20, 1889, a deed of conveyance to the same land was made by Harrington and wife to J. A. Soloman and M. N. Rosenthal for a recited consideration of $5000, which deed was recorded February 22, 1889. On February 26, 1889, Soloman and Rosenthal executed a special warranty deed reconveying the land to J. R. Harrington in consideration, as recited in said deed, of $750 and five notes which constitute the basis of this suit. This deed was not recorded.

The Court of Civil Appeals state that so far there was no conflict in the testimony but proceed to give the testimony of several witnesses, which they say do not agree, but do not make any findings of fact upon the controverted issues. As the court instructed the jury to find for the plaintiff, we are authorized to examine the statement of facts to ascertain if there was any evidence upon which the jury might have found for the defendants, and if so the judgment must be reversed.

J. S. Soloman testified in substance that the firm of Lessing, Soloman & Rosenthal used the notes of Harrington at the banks as collateral security and, having arranged to pay the banks, gave Mr. H. Kempner, of Galveston, to whom they were then indebted, an order to take all collateral notes from the bank, among which were the Harrington notes, and that Kempner became the owner of them; but he also testifies that they afterwards arranged with H. B. Claflin & Co. to pay Kempner and

receive all collateral notes which Kempner held, which included the Harrington notes, and that Claflin & Co. paid Kempner fifty or sixty thousand dollars on collaterals, whereby Claflin & Co. became the owners of them.   He also testified that he did not know at the time that Harrington intended the deed as a mortgage instead of a sale; that he was not present when the deed was executed, and that Claflin & Co. did not know that Harrington and his wife claimed the notes as a mortgage on their homestead.

John Claflin, one of the plaintiffs below, and George Armstrong, the credit manager of the firm of Claflin & Co., and G. Pessels, their general agent in Texas, testified in substance that the notes were received by Claflin & Co. to be applied on the indebtedness of Lessing, Soloman & Rosenthal to them; that they nor either of them nor any of the firm knew of any defense to the note.   Pessels testified that he, as the agent of Claflin & Co., gave Kempner a draft for about $62,000, for cotton which belonged to Lessing, Soloman & Rosenthal and held by Kempner, and that at that time Lessing, Soloman & Rosenthal had failed and he, Pessels, was in charge of their store, they having sold their merchandise to Claflin & Co.   At the time the notes were turned over to Claflin & Co. by Kempner the first note for $947.70 was past due; the other four notes were not matured.

J. R. Harrington testified to the transaction which was had between himself, Lessing, Soloman & Rosenthal, and Powell, and to the reconveyance by Powell of the land to him, and in addition he testified that after the land had been reconveyed by Powell he conveyed it to Solooman & Rosenthal without any consideration except to secure the indebtedness due from himself and his firm to Lessing, Soloman & Rosenthal; that the conveyance to them was made at their instance and request and with the understanding and assurance on the part of Rosenthal, made to witness and wife, that the transaction would not involve the homestead, but that the notes would be held as security as before. He testified that the $750 mentioned in the deed from Solomon & Rosenthal to him as a part of the consideration paid by him was not in fact paid, but that Rosenthal gave him a check on a bank at Waco for $750.   He went to the bank and got the money and then paid it over to Soloman & Rosenthal, whose money it was.

Upon the face of each note given for the land was expressed that it was given, "in part payment for a certain lot or parcel of land consisting of two hundred acres of land in Hill County, Texas, part of a survey made by virtue of a headright certificate number 32 issued by the board of land commissioners of Milam County, Texas, on February 5, 1844, and transferred to H. F. Harbeson December 6, 1849, this day conveyed to me by J. A. Solomon and M. N. Rosenthal, to secure the payment of which a vendor's lien is reserved in said conveyance."   Each note contained the stipulation that a failure to pay it or any installment of interest thereon when due should at the election of the holder of the notes or any of them mature all of them.

Under the evidence introduced in this case the jury could have found that the notes sued upon were given by J. R. Harrington to Soloman & Rosenthal for a debt due by Harrington or by Harrington & Powers to the former, and that to secure the indebtedness Harrington and his wife made a deed conveying their homestead to Solomon & Rosenthal, with the understanding that it was to be reconveyed to them upon the payment of the debt, and that Solomon & Rosenthal had full knowledge of the facts. It was undisputed that the land in controversy was the homestead of Harrington and his wife and had been used and occupied by them as such for a number of years and has been continuously so used since the deed was made. The jury might likewise have found that the notes sued upon, with other property, were in the hands of H. Kempner as collateral security for a debt due to him from Lessing, Solomon & Rosenthal, who authorized Claflin & Co. to pay the debt of H. Kempner and to take the notes sued upon and hold them as collateral security for a debt due to them from Lessing, Solomon & Rosenthal, and that Claflin & Co. did receive the notes and other property from Kempner under such arrangement and hold them as collateral to a debt due from Lessing, Solomon & Rosenthal.

If the court had submitted the issue and the jury had come to the conclusions above stated, it would have been their duty to find a verdict for the defendants, because there is no evidence to show that the debt to which the notes stand as collateral security has not been paid, and if it has not been paid there is nothing to show how much remains unpaid upon it, nor does it appear from the evidence that it is necessary for Claflin & Co. to collect these notes in order to satisfy their debt against Lessing, Solomon & Rosenthal. It appearing that the maker of the notes had a good defense against the payees, it devolved upon the assignees of the notes, who hold them as collateral security to make proof of the facts stated, that is, that the debt secured by these notes has not been paid, how much is due upon it, and what other security they hold out of which it might be paid without injury to them and by which the homestead of the makers of the notes would be protected. In this connection we will state that the undisputed evidence shows that Claflin & Co. received the entire stock of goods which belonged to the firm of Lessing, Solomon & Rosenthal, also an amount of cotton which belonged to their debtors, from H. Kempner, for which they felt justified in advancing the sum of $62,000, and in addition thereto they received the notes sued on as collateral. What other property they held to secure their debt does not appear. They should have made the proof which would show them equitably entitled to enforce these notes and the lien upon this land in order to protect themselves. Wright v. Hardie, 88 Texas, 653.

Another question which arises upon the facts found and which are undisputed is, did the fact that the first note was overdue and unpaid charge Claflin & Co. with notice of the defense of the maker against the four notes not due? As to the first note as a matter of law the as-

signees were charged with notice that the note was not given for a part
of the purchase money of the land described therein, but that in fact it
was given for a part of a debt due from Harrington to Lessing, Soloman
& Rosenthal, that the recitals in the note and the deed from Harrington
and wife to Soloman & Rosenthal were false, and that it was part of an
unlawful transaction in which the parties attempted to mortgage the
homestead for a debt with which it could not be encumbered.

If Harrington had executed to Soloman & Rosenthal a contract for
five times the amount of the first note, aggregating $4853.50, making
the amount payable in installments of one fifth at the time named in
each note, the first installment being overdue and unpaid would be suffi-
cient to charge the assignee with notice of the vice in the whole trans-
action as to all the different payments. Vinton v. King, 4 Allen, 562;
Field v. Tibbetts, 57 Me., 358.

The five notes in this case were all in the hands of Kempner and were
the property of the original payees when Claflin & Co. acquired posses-
sion of them as the property of the payees. The face of the notes
showed that they were installment payments of one common considera-
tion, and each purported to be for a part of the purchase money of a
named and certain tract of land, showing that they were not only parts
of the same transaction but that in fact they constituted but one con-
tract. The vice in each and all of the notes could have been no less
definitely known to Claflin & Co. when looking at these five notes writ-
ten upon different pieces of paper than it would have been if they had
all been written in form of one contract. This being the case, we think
that it cannot be held that Claflin & Co. were chargeable with notice
of the vice of the contract so far as it affected the first note, but had no
notice in law that the same vice affected the other notes.

We are cited to the case of Boss v. Hewitt, 15 Wis., as holding the
contrary of this proposition, but an examination of that case shows that
the question was not involved in its determination and that the court
declined to express any opinion as to what would be the law upon a case
like this.

This suit was originally brought upon the five notes, but when the
plea of the defendants was filed, the petition was amended and the suit
abandoned as to the first note, which was overdue at the time that it
was taken. Now, suppose that the suit had continued as to all five of
the notes, the position taken by the defendants in error would have in-
volved the trial court in this absurd position; the judge must have
charged the jury that, the first note being overdue at the time it was
acquired by Claflin & Co., the plaintiffs were by law charged with
knowledge of the defense against it, and that they must find for the de-
fendant as to the first note, but as to the other four notes which were
not due when acquired by the plaintiffs—although given for a part of the
same consideration, and constituting a part of one transaction which
was fully shown upon the face of them—the jury must find for the
plaintiffs because the law would not charge them with knowledge of the

same vice in the last notes.   The effect of notice by the dishonor of the note overdue was to call attention to the fact that the maker had some defense against the note arising out of the original transaction, which defense must apply equally to each of the other notes which represent parts of a common consideration.   What we decide upon this point is that, all of the notes being together and acquired at the same time by the assignee, it appearing in each note that they were parts of one consideration and constitute one contract, the dishonor of the first note, being overdue and unpaid, charged Claflin & Co. with notice that the same defense existed in favor of the makers against the notes not due, as against the overdue note.

The court erred in instructing the jury to find for the plaintiffs as to the lien upon the land, for which error the judgments of the District Court and Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*