WHARTON et al. v. WASHINGTON COUNTY STATE BANK.

(Court of Civil Appeals of Texas. El Paso. Feb. 6, 1913.)

1. CORPORATIONS (§ 314*)—OFFICERS—FRAUDULENT ACTS — BILLS AND NOTES — TRUST DEED.

The execution of the company's note and trust deed by the president of a private corporation as security for his own debt in which the corporation had no interest was fraudulent.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1393–1398, 1400; Dec. Dig. § 314.*]

2. PLEDGES (§ 58*)—ACTION BY PLEDGEE—BURDEN OF PROOF.

Where, in an action on a note assigned as collateral, the maker pleaded and proved a good defense as against the payees, the pledgee could not recover in the absence of proof of nonpayment of the debt for which it was pledged, of the amount due upon it, and of what other security, if any, was held by the pledgee.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 186–194; Dec. Dig. § 58.*]

3. CORPORATIONS (§ 414*) — AUTHORIZATION OF OFFICERS—EXECUTION OF NOTE.

An authorization to borrow money and execute secured notes therefor did not authorize the president of a corporation to execute a note and deed of trust in settlement of an existing debt, and a note and deed so executed in the name of the corporation were void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1640–1646; Dec. Dig. § 414.*]

4. CORPORATIONS (§ 405*) — AUTHORITY OF OFFICERS.

While, as a general rule, the president of a private corporation may not, in the absence of special authority from the directors, control its funds or management, the board of directors may expressly so authorize him, or his authority to control may arise from his having assumed and exercised that power, or from the corporation having accepted the benefits of his exercise of such power.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1603; Dec. Dig. § 405.*]

5. RECEIVERS (§ 78*)—SALE OF PROPERTY—CUSTODY OF LAW.

In an action against a receiver of a private corporation to recover on a note and foreclose a deed of trust, a judgment directing that an order of sale issue to the sheriff or constable of the county where the property was situated was improper; the appointment of a receiver operating to place the corporation's property in the custody of the law, so that it could be sold only by the receiver under orders of the court.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 145–147; Dec. Dig. § 78.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by the Washington County State Bank against Earl Wharton, receiver, and others. From judgment for plaintiff, defendants appeal. Reversed and remanded.

C. R. Wharton, L. B. Moody, and Earl Wharton, all of Houston, for appellants. Robt. E. Goree, of Houston, for appellee.

HARPER, C. J. The Washington County State Bank filed this suit to recover of the receiver of the F. E. Pye Realty Company and F. E. Pye and L. H. Perry on a promissory note for $8,000, and for foreclosure of deed of trust executed to secure the same. The note in question is signed F. E. Pye Realty Company and F. E. Pye, and payable to the order of L. H. Perry, and by him indorsed in blank. The plaintiff alleged that said note was transferred as security for said Pye's guaranty of $7,500 note of the Shelp Rubber Company, which said last note was owned by the plaintiff, and also that the note sued on had been substituted for a note of $8,000 executed by Chas. Hills to L. H. Perry, and transferred to the plaintiff by F. E. Pye and was surrendered, and the suit filed thereon dismissed by plaintiff in consideration for the note sued on herein. The case was tried before the court without a jury, and judgment for plaintiff. Trial court's findings of facts:

"(1) A note of the Shelp Rubber & Supply Company came in the regular course of business into the hands of the Washington County State Bank, and was placed by them in the hands of their counsel, R. E. Goree.

"(2) The note was guaranteed by F. E. Pye, who was at that time president of the Central Bank & Trust Company, which company, it seems, was discounting paper with interior state banks.

"(3) When the note became due, or perhaps before, the Washington County State Bank, through its attorney, was threatening to sue on it, and F. E. Pye, for himself and perhaps for his bank, was endeavoring to prevent suit being brought by the attorney for the bank, but the attorney for the bank told him that he would sue unless he got more security.

"(4) There was no express promise made to Pye that the note would be extended and the attorney of the bank did not guarantee to extend it, but the substance of the conversation was that unless he got more security he would sue, and thereupon Mr. Pye brought him a note signed by one Hills and made payable to L. H. Perry, and indorsed by Mr. Perry, which note was not due, and was for $8,000, secured by a lien on real estate.

"(5) That note came into the hands of Pye in this way: Mr. Perry and Mr. Pye had many dealings together. Mr. Pye was a

broker and banker and real estate man and lender and borrower of money, and Mr. Perry gave him that note, together with a series of what are called book notes, which means serial notes bound together in books, all amounting to about $29,000, which Mr. Pye was to use as collateral to borrow money for Mr. Perry, who was a builder of houses.

"(6) Mr. Pye took the Hills note and carried it to Mr. Goree, the attorney for the Washington County State Bank, and gave it to him as a further guaranty of the payment of the Shelp Rubber & Supply Company note. It may be stated here that later the Shelp Rubber & Supply Company reorganized and passed into the hands of the Texas Rubber & Supply Company, of which Mr. Pye was president.

"(7) When the Hills note became due, Mr. Goree, the attorney of the Washington County State Bank, notified Mr. Perry, who for the first time knew that the Hills note was in the hands of anybody except Mr. Pye, and, when informed that Mr. Goree had it, he said, 'I will see Pye,' and Mr. Pye and Mr. Perry came together to the office of Mr. Goree to get the Hills note, which Mr. Perry was under the impression had been lost or mislaid.

"(8) Mr. Goree refused to surrender the note, it having come to him in the ordinary course of business as negotiable paper, unless they would give him some other or better security.

"(9) Mr. Perry and Mr. Pye then returned with the note of Mr. Pye and of the Pye Realty Company, made to L. H. Perry, for $8,000 and secured by real estate, and that is the note sued on in this action.

"(10) Mr. Goree inquired of the parties if that note was a bona fide transaction as distinguished from mere accommodation paper and Mr. Pye assured him it was, and Mr. Goree testified unreservedly that Mr. Perry did the same, but there was some hesitation upon Mr. Perry's part as to exactly what he did say, but, at the time the transaction took place, Mr. Perry signed a letter to the Washington County State Bank, in which he stated that if they would accept the note of the F. E. Pye Realty Company, which had been executed to him for funds advanced, he would pay the costs of the suit then pending against him in the district court of Harris county, and hold the bank harmless as against any claim he might have against it by reason of having been sued on the $8,000 note. With these assurances, Mr. Goree took the note now sued on and released the Hills note.

"(11) Mr. Goree called a witness in to hear the statements of Mr. Perry and Mr. Pye, but the witness either could not or would not remember the conversation with any distinctness, but Mr. Pye unreservedly stated that he told Mr. Goree that the transaction was entirely bona fide, though he testified at the same time that it was not in fact so.

"(12) Now it is manifest that the main question is: Did the bank, through Mr. Goree, receive the Hills note under such circumstances as to entitle it to protection accorded an innocent purchaser for value without notice?

"(13) There was introduced in evidence without objection copy of a resolution of the board of directors of the Pye Realty Company, authorizing Mr. Pye to borrow money for the company and to give mortgages upon its property."

First assignment of error: "The court erred in rendering and entering judgment in favor of plaintiff against the defendants for the amounts of the principal and interest and attorney's fees specified in the note sued on herein, because it appears that said note was wholly without consideration, and invalid as between the original parties thereto, and that the claim of the plaintiff is merely that said note is held by it as collateral security for a guaranty of F. E. Pye of a certain note for $7,500, interest and attorney's fees, dated October 12, 1909, executed by Shelp Rubber & Supply Company, payable to its own order, and indorsed by it, and also guaranteed by W. B. Shelp and F. W. Thaison, and there is no evidence to show that said Shelp Rubber & Supply Company's note has not been paid, nor how much remains unpaid upon it, nor does it appear from the evidence that it is necessary for the plaintiff to collect the note sued on herein in order to satisfy its debt against the Shelp Rubber & Supply Company and the guarantors upon the note of the said Shelp Rubber & Supply Company." Defendant Earl Wharton, receiver of the F. E. Pye Realty Company, pleaded that the note sued on and the deed of trust were without consideration, and are ultra vires, and were executed by F. E. Pye as president of the private corporation without authority, of all of which plaintiff had full notice at and prior to the time said note and deed of trust were executed and delivered.

[1, 2] The undisputed evidence in this case is that the note sued on originated in fraud—that is, that Pye, as president of the private corporation, executed the note and deed of trust as security for his own debt, in which the corporation had no interest—which brings it clearly within the rule of law enunciated in Harrington v. Claflin & Co., 91 Tex. 299, 42 S. W. 1055; Wright v. Hardie, 88 Tex. 653, 32 S. W. 885; Herman v. Gunter, 83 Tex. 66, 18 S. W. 428, 29 Am. St. Rep. 632. That is, it appearing that the maker of the note had a good defense against the payees (the trial court made no finding of fact upon the point), and having pleaded and proven same, it devolved upon the assignee of the note, who holds it as collateral security, to make proof that the debt secured by the note has not been paid, how much is due upon it, and what other security it holds, if any, out of which it might be paid without injury

to it, and by which the maker, the Realty Company, might be protected, and the record is silent upon these propositions. The assignment is good. This also disposes of the fourth and fifth assignments of error.

The sixth, seventh, eighth, and ninth assignments charge, in one form or another, that the court erred in rendering judgment for plaintiff, since the bank parted with no substantial right or anything of value as a consideration for the Hills note of $8,000, which was stolen, for which the note sued on was exchanged. The view we take of the case is that the note sued on was deposited with the plaintiff to secure the payment of the note of the Rubber Company, for which Pye had given his written guaranty, and unaffected by the transaction between the parties over the Hills note.

[3] The second assignment of error: "The court erred in rendering and entering judgment in favor of plaintiff and against these defendants for the amount of the principal, interest, and attorney's fees specified in the note sued on herein, and for foreclosure of the deed of trust lien, because there is no evidence that F. E. Pye had any authority to execute said note and deed of trust, and because it affirmatively appears from the resolution introduced by plaintiff that said Pye was authorized to execute notes and deeds of trust only for the purpose of borrowing money for the use of the Pye Realty Company, and it further appears that the said note and deed of trust were not executed for such purposes."

[4] The general rule is that the president of a private corporation has no power, in the absence of special authority granted by the board of directors, to control its funds or management. The board of directors may expressly authorize him, or his authority to control may arise from his having assumed and exercised that power in the past, or the corporation may accept and ratify benefits and be thereby bound. Cook on Cor. § 716; Carothers v. Alexander, 74 Tex. 309, 12 S. W. 4; Franco-Tex. Land Co. v. McCormick, 85 Tex. 420, 23 S. W. 123, 34 Am. St. Rep. 815. In M., K. & T. Ry. Co. v. Faulkner, 88 Tex. 649, 32 S. W. 883, it is held that a person dealing with an agent of a corporation must at his peril ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the agent's assumption of authority, which may prove to be unfounded. The only evidence adduced upon the trial of this case of the authority of Pye to bind the corporation in the execution of the note sued on and the attendant deed of trust to secure its payment is the statement of Pye, the president of the corporation, to wit, "Mr. Perry is due some money by the Pye Realty Company, and it is to be put in the form of a note," that the execution of the note and deed of trust were executed as a bona fide

transaction (statements of the agent himself), and the resolution of the board of directors as follows: "Be it resolved that F. E. Pye, president of the Pye Realty Co., shall have authority to borrow money in any sums he may see fit, and to execute the note or notes of said company for such purposes, and if required he is authorized to give security by deed of trust or mortgage upon any of such company's property as security for said note or notes, and any and all notes heretofore made by said F. E. Pye for said company as hereby ratified. [Signed] Approved by F. E. Pye, as President. Ira Tisdale, Secy." It does not appear that he had any authority to pay debts, and so the note sued on, having been executed for "the money due to Perry by the Pye Realty Co.," was in settlement of an existing debt. Conceding that the evidence of Pye was true, and there is nothing in evidence to show that Pye had authority to pay debts, it follows that, if Pye had no authority from the board of directors to execute the note sued on, the obligations are ultra vires and therefore void.

[5] The third assignment complains of the judgment of the court because it orders and directs that an order of sale issue to the sheriff or any constable of the county where the property is situated. This assignment is also good. The order of court appointing receiver placed the property of the corporation in the custody of the law, and it must be sold by the receiver under the orders of the court. Texas Trunk Ry. Co. v. Lewis, 81 Tex. 8, 16 S. W. 647, 26 Am. St. Rep. 776; Riesner v. Railway Co., 89 Tex. 658, 36 S. W. 53, 33 L. R. A. 171, 59 Am. St. Rep. 84, and the authorities cited.

For the errors indicated, this cause must be reversed and remanded. So ordered.