## LIVE STOCK STATE BANK et al. v. LOCKE. (No. 2422.)*

(Court of Civil Appeals of Texas. Amarillo. Oct. 21, 1925. Rehearing Denied Nov. 25, 1925.)

1. **Banks and banking** ⊛=135—**Depositor may set off deposit against indebtedness, though bank becomes insolvent and assets are in hands of receiver.**

Where a depositor is indebted to a bank and his indebtedness is due, he may set off his deposit against indebtedness, even though bank becomes insolvent and its assets are placed in hands of a receiver or commissioner for liquidation.

2. **Banks and banking** ⊛=135 — **Depositor's right to set off against bank exists without any previous demand being made for deposit.**

Right of depositor to set off deposit against indebtedness owing to bank exists without any previous demand being made for deposit, and even though indebtedness at time bank becomes insolvent is not due.

3. **Pledges** ⊛=58(1, 5)—**Collection not permitted on collateral notes against which maker has offset, where creditor has other securities sufficient to satisfy his debt; burden on creditor to show necessity of collection.**

When creditor holds collateral security against which there is no defense or offset more than sufficient to satisfy his debt, equity will not permit him to collect on collateral notes against which maker has a just, legal, or equitable offset which would be lost if creditor was permitted to collect such note, and burden rests on creditor to show necessity of collecting it.

4. **Pledges** ⊛=58(5)—**Burden on assignee to overcome presumption that notes held as collateral security for debt were not valid and collectible.**

Where bank assigned note of depositor as collateral security for its debt and depositor had an offset against indebtedness owing to bank, other notes held by assignee as collateral security for its debt would be presumed to be valid and collectible, and burden rested on assignee suing on depositor's note to overcome such presumption.

5. **Pledges** ⊛=58(1)—**No recovery on note of one having offset by pledgee, in absence of showing that other collateral security uncollectible.**

Where bank assigned note of depositor as collateral for its debt and depositor had an offset, assignee *held* not entitled to recover on note without showing that other collateral security for its debt was invalid and uncollectible.

Appeal from District Court, Roberts County; W. R. Ewing, Judge.

Action by the Live Stock State Bank and others against N. S. Locke. Judgment for the defendant, and plaintiffs appeal. Affirmed.

Hoover, Hoover & Willis, of Canadian, for appellants.

Coffee, Holmes & Coffee, of Miami, for appellee.

HALL, C. J. On the 27th day of July, 1923, the appellee, Locke, executed and delivered to the Bank of Miami, a private banking concern, his promissory note in the sum of $1,771.34, payable on demand. On September 3, 1923, the Bank of Miami was indebted to the appellant Live Stock State Bank of Kansas City, Mo., in an amount exceeding $30,000, and on that date pledged the note sued upon, together with about 30 other notes made by other debtors, to the appellant bank as collateral to its indebtedness. On November 2, 1923, the plaintiff bank became insolvent, and F. C. Millspaugh, commissioner of finance of the state of Missouri, took charge thereof, and in the course of liquidating its affairs filed this suit.

The Bank of Miami failed February 21, 1924, and at that time was indebted to the plaintiff bank in about $32,000. On February 7, 1923, the appellee, Locke, entered into a written contract with the Bank of Miami, by the terms of which it was agreed that the Bank of Miami should, at the option of Locke, sell all of its assets and business to him, including the town lot in Miami upon which the bank was then doing business. It was further stipulated that Locke would finance the Bank of Miami thereafter with such funds as it might require until he assumed ownership and control thereof in an amount not to exceed $20,000; that the owners of the Miami Bank would loan said bank, as a basis of credit, either their well-secured notes or money during the time the written contract should be in force in the several sums stated therein. Locke obligated himself to try to get all of the bank's paper renewed and secured in the best possible way before he took over the bank and its business. Amongst other stipulations, Locke was authorized to demand a transfer of the bank's property on August 1, 1923, at his option, or at some later date at his option. It was further stipulated that Locke should erect a two-story brick building upon the lot where the old bank building stood, and that the lower story of the new building should be used by the bank as its place of business without rent until August 1, 1923, or until Locke should exercise his option, and after August 1st the bank should pay Locke rent equal to 10 per cent. of the cost and equipment of the room in the building to be used by the bank. It was further stipulated that in the event the bank was unable to perform or carry out its obligation, the amount advanced by Locke should be returned to him, and until said amount was paid he should be regarded as the creditor of the bank. It appears that Locke deposit-

---

⊛=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused January 20, 1926.

ed $15,000 with the bank under the terms of the contract; that the building was constructed by him, and part of the ground floor occupied by the bank until August 1, 1923, without payment of rent. Prior to August 1, 1923, Locke notified the bank that he had decided not to purchase it, and to find another purchaser. It further appears that the bank negotiated with two other parties, and finally sold to one of them on September 25, 1923, and that it commenced paying rent from and after August 1, 1923. The $15,000 which Locke deposited in the bank during the life of the written contract was kept in a special account, and that amount was due him when the note was executed. He was not allowed to check on it until after the bank's business had been sold to another purchaser. While the new building was in the course of construction, Locke gave some checks upon the bank for the payment of sums due for the construction of his building. The checks were turned down by the cashier of the bank, and the note in suit was executed in lieu of the checks, his account was credited with the amount of the note, and the checks were then paid. The amount of the note was placed to his credit by the bank in what was designated on the books as the "N. S. Locke Building Account." This account was opened July 28, 1923.

The court directed the jury to return a verdict for Locke. From a judgment entered in accordance with this verdict, the Live Stock State Bank and its receiver have prosecuted this appeal.

According to the plain terms of the option contract made between Locke and the Miami Bank on February 7, 1923, he was not entitled to check upon the $15,000 deposited by him, for the reason that it was a special deposit governed by the terms of the contract. After he had exercised his option not to purchase the Bank of Miami, and the bank had acquiesced in his decision, manifesting its assent by the payment of rent after that date, and negotiating with other parties for the sale of the bank, it became the debtor of Locke to the full amount of his deposit at that time. Thereafter the purchaser of the bank permitted Locke to check upon his account. It further appears that at the time of the trial the Bank of Miami owed the plaintiff bank about $8,800, and that it held collateral notes, including the note sued on, to secure such indebtedness in an amount a little less than $35,000, and that there was no offset in favor of the original payees in said notes to the extent of $18,557.51.

[1-5] We will not undertake to discuss in detail the numerous contentions in the briefs of the parties. The rule seems to be settled that where a depositor is indebted to a bank, and his indebtedness is due, he may set off his deposit against the indebtedness, and this is true, although the bank becomes insolvent and its assets are placed in the hands of a receiver or commissioner for liquidation. It is further the law that this right of set-off exists without any previous demand being made for the deposit, and even though the indebtedness of the depositor to the bank at the time it became insolvent is not due. Funk v. Young, 138 Ark. 8, 210 S. W. 143, 5 A. L. R. 79 and note; 3 R. C. L. 529, § 183, and 647, § 276; 7 C. J. 652. The rule is further settled in this state that when collateral security is held by the creditor for his protection against which there is no defense or offset, in an amount more than sufficient to satisfy his debt, equity will not permit him to collect on the collateral notes against which the maker has a just, legal, or equitable offset, which would be lost to him if the creditor is permitted to collect such note, and the burden rests upon the creditor to show the necessity of collecting it in order to satisfy his debt. The presumption is to be indulged in favor of Locke that the other notes held by plaintiff bank as collateral security were valid and collectible, and the burden rested upon plaintiff to overcome this presumption. Admitting that plaintiff bank is an innocent holder of the note in suit and is entitled to all the protection given such a holder, nevertheless, as said in Van Winkle Gin Co. v. Citizens' Bank of Buffalo, 89 Tex. 147, 33 S. W. 862:

"Whether the doctrine upon which the courts allow the innocent holder of commercial paper to recover against the negligent but innocent acceptor or maker is based upon broad principles of public policy intended to foster commerce, or upon the principles of an equitable estoppel, or both, it is clear that it extends no further than is necessary to the complete protection of the innocent holder, and cannot be extended so as to allow such holder to pervert the equitable principles upon which it is based, for the purpose of aiding one party to a commercial instrument in obtaining an undue advantage over another."

In Iowa City State Bank v. Friar (Tex. Civ. App.) 167 S. W. 261, it is said:

"What other property they held to secure their debt does not appear. They should have made the proof which would show them equitably entitled to enforce these notes and the lien upon this land in order to protect themselves."

See, also, Harrington et ux. v. Claflin, 91 Tex. 294, 42 S. W. 1055; Bruyere v. Liberty National Bank (Tex. Civ. App.) 262 S. W. 844; Wharton v. Washington County State Bank (Tex. Civ. App.) 153 S. W. 699; Smith v. Cooley (Tex. Civ. App.) 164 S. W. 1050; Continental & Commercial National Bank v. Meister (Tex. Civ. App.) 186 S. W. 377.

What is here said renders it unnecessary to discuss the other propositions, and the judgment is affirmed.