### AUSTIN, Banking Com'r, v. WORTHAM.
### (No. 3433.)

Court of Civil Appeals of Texas. Texarkana.
Sept. 29, 1927.

**1. Banks and banking ⬅️135—Ordinarily, interest in deposit in bank when taken over by banking commissioner may be set off against debt to bank.**

Legal and equitable owner of interest in deposit in insolvent bank when closed and taken over by banking commissioner ordinarily has equitable right, independent of statute, to offset such interest against his debt to bank.

**2. Corporations ⬅️629—Corporate property may be distributed among stockholders before formal dissolution, where creditors' rights are unaffected (Rev. St. 1925, art. 1387).**

Corporate property may be transferred and distributed among stockholders before formal dissolution of corporation by filing of proper paper in secretary of state's office under Rev. St. 1925, art. 1387, where rights of creditors are not affected.

**3. Banks and banking ⬅️63½—Evidence in action on notes of stockholder of corporate depositor, held to warrant findings that stockholders agreed and sufficiently executed agreement to divide proceeds of corporate assets.**

In banking commissioner's action on notes payable to insolvent bank, whose vice president had agreed to apply maker's interest as stockholder in corporate deposit to payment of notes when returned to bank, which had deposited them with another bank as security for loan, evidence *held* to warrant finding that stockholders had unanimously agreed to divide proceeds of sale of corporate assets among themselves, and executed such agreement so far as necessary to be done by them in a body.

**4. Corporations ⬅️629—Delivery of checks for stockholders' shares of proceeds of corporate assets held not essential to transfer of corporate title in bank deposit.**

Actual delivery of checks for stockholders' shares of proceeds of sale of corporate assets, pursuant to their agreement to divide proceeds, *held* not essential to transfer of corporate title to deposit in insolvent bank to individual stockholders, so as to preclude offset of stockholder's interest therein against his debt to bank, corporation's claim against bank being personal property, title to which might be transferred by oral assignment.

**5. Corporations ⬅️610(2) — Stockholders' agreement to dissolve corporation is effective as to them and all disinterested parties.**

Agreement of stockholders to go out of business and dissolve corporation is effective as to stockholders and all disinterested parties.

**6. Corporations ⬅️629—Stockholders could bind corporation by agreement to divide proceeds at meeting held after sale of corporate assets pursuant to prior dissolution agreement.**

At stockholders' meeting to settle affairs of corporation, after sale and conveyance of all its assets, pursuant to prior agreements to go out of business and dissolve corporation, they had right to act for corporation and bind it as independent legal entity by agreement to divide proceeds of sale, after payment of debts, among themselves.

**7. Banks and banking ⬅️63½—Banking commissioner, paying note pledged by insolvent bank, had burden of pleading and proving necessity of resorting thereto to secure reimbursement from maker.**

Banking commissioner, paying note pledged as collateral security by insolvent bank to which payable, had no greater right than pledgee bank could assert in foreclosure of its lien thereon, and hence had burden of pleading and proving, in action against maker of note, that resort thereto was necessary to secure reimbursement for amount paid pledgee.

**8. Banks and banking ⬅️135—Banking commissioner's payment of note, pledged by insolvent bank, did not defeat maker's right to set off interest in deposit, in absence of pleading and proof of necessity of resorting to note for reimbursement.**

Banking commissioner's payment of note, pledged by insolvent payee bank as collateral for loan by another bank, *held* not to defeat maker's right to set off his interest in deposit in payee bank in commissioner's action on note, in absence of pleading or proof of necessity for resorting to note to secure reimbursement.

**9. Banks and banking ⬅️135—Stockholder held not estopped to set off interest in corporate deposit against notes payable to insolvent bank by subsequently presenting claim in corporation's name and receiving dividend.**

Stockholder presenting claim to banking commissioner in name of corporate depositor and receiving dividend *held* not estopped to set off his interest in deposit in commissioner's pending action on notes payable to bank, commissioner not having changed attitude or lost any rights which may be asserted in final settlement of controversy.

**10. Banks and banking ⬅️63½—Banking commissioner held entitled to credit for dividend received on claim presented in corporation's name by one setting off his interest in corporate deposit against notes sued on.**

Banking commissioner suing on notes, against which defendant set off his interest as stockholder in corporate deposit, under agreement to divide proceeds of sale of corporate assets among stockholders, *held* entitled to full credit for portion of dividend received by defendant on claim presented by him in name of corporation.

**11. Costs ⬅️172—Banking commissioner held not entitled to attorney's fees, in action on notes of one having interest in corporate deposit.**

Stockholder having good and valid defense to banking commissioner's suit on notes, payable to insolvent bank, to extent of his interest in corporate deposit, under agreement to divide proceeds of sale of corporate assets among stockholders, commissioner was not entitled to recover attorney's fees.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Costs** ☞238(2)—**Costs of appeal will be taxed against appellant not complaining of error because of which amount of judgment was increased on appeal.**

Where no complaint was made of error, because of which amount of judgment was increased on appeal, costs of appeal will be taxed against appellant.

Appeal from District Court, Lamar County; Newman Phillips, Judge.

Action by Chas. O. Austin, Banking Commissioner, against G. W. Wortham. From a judgment for plaintiff in an unsatisfactory amount, he appeals. Reformed, and affirmed as reformed.

Jno. W. Brady and Jno. W. Goodwin, both of Austin, and R. E. Eubank, of Paris, for appellant.

W. F. Moore, of Paris, for appellee.

HODGES, J. The appellant, Austin, as commissioner of banking, filed this suit against the appellee to recover on two promissory notes payable to the First State Bank of Paris. One was for $2,900 due January 1, 1927, and the other for $352.05 due July 1, 1926. Both notes provided for the payment of interest and attorney's fees. It was alleged and proved that the First State Bank of Paris became insolvent and was closed by the commissioner of banking on May 26, 1926. In the trial below the execution of the notes sued on was admitted. The only defense presented was an offset, which is, in substance, as follows:

At the time the notes were executed appellee, Wortham, was a stockholder in a private corporation known as the Paris Baking Company. Since its organization the baking company had been doing its banking business with the First State Bank, and had a deposit to its credit at the time the bank was closed. At a meeting of the stockholders of the baking company held on April 12, 1926, it was unanimously agreed to sell the assets of that company, go out of business, and dissolve the corporation. Following that agreement, on May 8, 1926, the baking company executed a written transfer conveying all of its property to the Southwest Baking Company, the purchaser. As a consideration for the sale of its property to the Southwest Baking Company, the Paris Baking Company acquired some notes and several thousand dollars in cash. The cash received was deposited in the First State Bank. On May 10, 1926, another meeting of the stockholders of the Paris Baking Company was held to finally settle the business affairs of the corporation. At that meeting it was found that after the payment of the debts of the concern there would remain a cash surplus of $6,500. It was then agreed by the stockholders of the baking company to divide among themselves the assets of the corporation, all of the stockholders being present. In that division $3,298.08 of the cash on deposit in the First State Bank was awarded to the appellee, and the remainder to other stockholders. The necessary steps to dissolve the corporate existence of the baking company in accordance with statutory requirements were also provided for. The appellee, as secretary of that corporation was directed to draw checks on the First State Bank for the payment of all the debts of the concern and in favor of the distributees of the surplus cash then in bank. He drew checks in the name of the baking company in favor of all its creditors, but did not draw any checks in favor of the distributees of the cash in bank. All the checks sent to creditors, except two, which aggregated approximately $200, were presented and paid before the bank was closed. Those which were not paid by the bank were afterwards paid by the appellee out of his own funds. Within a short time after the meeting of May 10, at which it was agreed to distribute among the stockholders the money and notes then on hand, the appellee notified the vice president of the bank of what had been done at the stockholders' meeting in the way of distributing the assets of the baking company. He expressed to the vice president a desire to have his interest in the deposit then appearing to the credit of the Paris Baking Company on the books of the bank applied to the payment of his notes held by the bank. The vice president agreed that the notes might be satisfied in that way, but upon investigation he ascertained that the notes had been deposited with a Dallas bank as collateral security for a loan made by the Dallas bank to the First State Bank. The vice president, however, agreed that the notes might be paid as soon as they were returned to his possession. At that time the First State Bank was doing business in the usual way, and the appellee knew nothing of its failing condition. When the bank was closed on the 26th of May his notes were still in the hands of the Dallas bank. Some time after the appellant, as commissioner, took charge of the affairs of the First State Bank, he paid off the note to the Dallas bank and secured possession of appellee's notes, which he continued to hold as a part of the assets of the First State Bank. After the closing of that bank the appellee renewed his offer to settle the notes by applying his portion of the deposit then held in the name of the baking company. His offer was refused, and appellee declined to pay his notes. As a result of the failure to settle the notes in that manner this suit followed.

In the trial below the court overruled a demurrer to appellee's special plea, and, after hearing the evidence, allowed the offset and rendered a judgment accordingly. The record

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

shows a balance amounting to $79.05 was awarded to the appellant.

In this appeal the judgment is assailed upon the ground that it was not warranted by the facts pleaded in the special answer or those proved in the trial.

In addition to the facts above stated it was shown by the evidence that the articles of dissolution of the Paris Baking Company were dated June 18, 1926, and the final certificate of dissolution filed with the secretary of state contained the affidavit of the appellee sworn to on July 26, 1926. Among other things, this affidavit recited that the baking company had done no business subsequent to April 30, 1926. The certificate of dissolution issued by the secretary of state was dated July 29, 1926. It thus appears that the corporation was not formally dissolved as required by article 1387 of the statute (Rev. St. 1925), until some time after the First State Bank was closed and its affairs taken over by the appellant as commissioner of banking. In September, after the appellant had declined to allow the appellee to settle his indebtedness in accordance with the agreement previously made with the vice president of the First State Bank, appellee filed with the commissioner a claim for $6,700 in the name of the Paris Baking Company and was paid a dividend on that claim of $900, of which appellee received $450. He explained the presentation of that claim in the name of the corporation instead of the individual claims of the stockholders by saying that the banking department sent him a blank form for claim against the bank in the name of the Paris Baking Company for the sum of $6,700, and that he signed it that way. He further explained his failure to draw checks against the corporation's deposit in favor of the other stockholders by saying he was waiting to pay off his notes, intending to check it all out at the same time. The balance in the First State Bank to the credit of the Paris Baking Company on May 10 was $16,266.24. After the payment of a number of checks drawn in favor of creditors, that balance amounted, on May 25, the day before the bank was closed, to $6,700.

Since the facts of this case are undisputed, the controlling issues present only questions of law. It was agreed between counsel for the parties in the trial that the First State Bank of Paris went into voluntary liquidation on the 26th day of May, 1926. Its doors were closed at midnight the beginning of that day, and its affairs since that time and continuously till the time of the trial were in the hands of the appellant, Austin, as state banking commissioner.

[1] The first question to be considered is, Who was the legal and equitable owner of the deposit, or claim, standing in the name of the Paris Baking Company on the books of the bank, at the time the latter was closed? Did it belong to the baking company as a corporation, or had it been legally transferred from the corporation to the individual stockholders? If the claim still belonged to the corporation, then, clearly, the appellee has no right to the offset he now pleads. But if the corporation had ceased to do business, was in process of dissolution, and had transferred and distributed its property among its stockholders, appellee would stand in a different legal attitude. In other words, if at the time the bank passed into the hands of the commissioner the appellee was individually the legal and equitable owner of an interest in the claim against the First State Bank, he would, under ordinary conditions, have the right to offset that claim against a debt due from him to the bank. Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Van Winkle v. Citizens' Bank, 89 Tex. 153, 88 S. W. 862; Griffin v. Heard, 78 Tex. 613, 14 S. W. 892; Owens v. Amer. Nat. Bank, 36 Tex. Civ. App. 490, 81 S. W. 988; McManus v. Cash, 101 Tex. 264, 108 S. W. 800. His right to such a set-off is an equitable one and does not depend on the statute. The creditors of an insolvent bank can claim as assets subject to the payment of their debts only the excess which a depositor may owe the bank above what the bank owes him. North Chicago Rolling Mills Co. v. St. Louis Ore, etc., Co., 152 U. S. 596, 14 S. Ct. 710, 38 L. Ed. 565. But in order for a depositor or any creditor of an insolvent bank to claim this right of set-off, the right must be in existence at the time the bank is closed and its affairs pass into legal custody.

[2, 3] Counsel for appellant insist that since it conclusively appears from the evidence that the Paris Baking Company was still an existing corporation at the time the bank was closed, the corporation, and not its stockholders, was the legal and equitable owner of the deposit in the bank at the time the latter was closed. In disposing of this case it will be conceded that the Paris Baking Company had not ceased to exist as a corporate entity until the proper papers had been filed in the office of the secretary of state as required by article 1387 of the Revised Civil Statutes. The proof shows that this was not done till some time in July, approximately two months after the bank was closed. Appellant's contention would therefore be correct if the stockholders must depend for their individual rights on the legal descent of the title which follow the dissolution of the corporation. But there is evidence tending to prove a transfer and distribution of the corporate property among the stockholders before the baking company was formally dissolved. That this may be done, where the rights of creditors are not affected, cannot be denied. The question then is, Was such a transfer and distribution made? The proof shows that there were six stockholders of the Paris Baking Company. All of them were present at the

April meeting, when it was determined to sell the tangible property of the company and go out of business. They were also present at the May meeting, the last they ever held, so far as the record shows, and at which the distribution of the corporate property was agreed upon and specific amounts severally allotted to the stockholders. Wortham testified, in substance, that prior to this meeting he had ascertained that the debts of the company amounted to approximately $10,000, and, as secretary, had drawn checks against the deposit in the First State Bank and mailed them to each one of the creditors. Some of the creditors lived at a distance from Paris. All but a few of the checks were sent in and paid by the Paris bank before it closed its doors. Those not returned and paid by the bank he satisfied out of his individual funds. The consideration paid by the Southwest Baking Company for the assets of the Paris Baking Company was $30,000; $10,000 of it was cash, $5,000 in stock, and $15,000 in notes. It was agreed among the stockholders that some of them should take their interest in notes, and others partly in notes and partly in cash. The minutes of the meeting of the stockholders on May 10 show the following distribution of the assets of the baking company:

### Division of Assets.

Southwest Baking Company notes divided as follows:

| | |
|---|---|
| C. E. Reeves pro rata | $ 1,153 85 |
| Ben White | 1,153 85 |
| A. C. Wortham | 4,423 08 |
| O. J. Johnson | 4,423 08 |
| P. J. Graves | 3,846 16 |
| Total notes | $15,000 00 |

$6,500.00 cash in First State Bank:

| | |
|---|---|
| C. E. Reeves | $ 375 00 |
| Ben White | 375 00 |
| A. C. Wortham | 1,437 50 |
| P. J. Graves | 1,014 42 |
| G. W. Wortham | 3,298 08 |
| Total | $6,500 00 |

Mt. Pleasant Bakery notes:

| | |
|---|---|
| Reeves | $207 69 |
| White | 207 69 |
| A. C. Wortham | 796 15 |
| P. J. Graves | 796 15 |
| O. J. Johnson | 796 15 |
| G. W. Wortham | 796 15 |

Wortham further testified that the notes and the $5,000 worth of stock which formed a part of the consideration for the sale of the corporate assets were actually delivered to the distributees, and that he was made trustee to do what was necessary to complete the distribution and settle the debts of the concern. He intended, at some future time when he settled his own affairs with the bank, to give to each one of the distributees to whom cash in bank had been allotted a check for his distributive share. That had not been done because he was waiting until he settled his note with the bank by checking against his interest in that deposit. He did not know of the insolvency of the bank and was not expecting it to close its doors at the time. He relied upon his understanding with McGlasson, the vice president of the bank, that when his note was returned from Dallas he would be permitted to pay it off by checking on his interest in the deposit. With that testimony before him, we think the trial court had a right to conclude that after providing for the payment of the debts of the baking company the stockholders had unanimously agreed to divide the proceeds of the sale of the corporate assets among themselves, and that they actually executed that agreement in so far as it was necessary to be done by the stockholders in a body. As stated by Wortham, so much of the consideration for the sale as was represented by notes and stock was actually distributed in accordance with the agreement, and the sum of money allotted to each of the distributees of the cash in bank had been distinctly specified.

[4-6] All that remained to complete the entire transaction of distribution was the giving of the checks by Wortham, as secretary, in the name of the corporation. The actual delivery of the checks in the name of the corporation was not essential to the transfer of the corporate title to the individual stockholders. The passage of the title resulted from the contractual agreement entered into by the stockholders with one another in the final settlement of the corporate affairs. The drawing and delivery of the checks thereafter was a mere clerical proceeding, for the purpose of furnishing the bank with the usual evidence of what had previously been done by the proper authority. The claim against the bank was personal property, the title to which might be transferred by oral assignment. The following cases, while not involving this identical question, support the conclusion announced: N. Y. Life Ins. Co. v. Patterson & Wallace, 35 Tex. Civ. App. 447, 80 S. W. 1058; Slaughter v. Bank (Tex. Civ. App.) 164 S. W. 27. An agreement of the stockholders to go out of business and dissolve the corporation is effective as to the stockholders and all disinterested parties. Wagner v. Marple, 10 Tex. Civ. App. 505, 31 S. W. 691; 5 Thompson on Corporations, §§ 6682 and 6712. At a meeting such as that held by the stockholders of the baking company on May 10 they had the right to act for the corporation and bind it as an independent legal entity. Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 163 S. W. 627.

[7, 8] But another important question arises which should also be discussed. The record contains the following agreement of counsel:

"It was agreed in open court by and between counsel for the parties hereto that the note for $100,000 due Republic National Bank, to secure which the Geo. W. Wortham note in controversy, among other notes, was pledged as collateral by First State Bank, Paris, Tex., was taken up and paid by the banking commission-

er on December 26, 1926, and came into the hands of the banking commissioner in due course, and that the collateral including the Wortham note, was released by Republic National Bank on said date and was forthwith delivered to the banking commissioner."

Those facts were pleaded by the appellant in reply to appellee's plea of set-off.

If the Paris bank had remained solvent and had filed this suit after regaining possession of the note, the transaction with the Dallas bank would be of no importance. But since the Paris bank became insolvent and this suit prosecuted by the banking commissioner as the representative of the bank's creditors, the situation is materially different. It will be assumed that the commissioner paid the note due to the Dallas bank with funds of the Paris bank held for creditors. It will here be conceded that by that transaction the commissioner, as trustee for creditors, may claim all the rights which the Dallas bank might have asserted in a foreclosure of its lien on the collateral in its hands. Certainly he cannot claim more than that. Had the Dallas bank brought a suit against the appellee on his note, he might have pleaded as a defense his offset against the Paris bank, and the insolvency of that institution. A defense of that character would have required the Dallas bank to plead and prove that the collection of the note was necessary to avoid a loss on the debt due it from the Paris bank. The rule has been thus stated:

"The innocent holder of a negotiable note as collateral security to which there is a valid defense against the original payee is protected, but only to the extent of his interest, the amount of the debt for which it is held as collateral. And the burden of proof rests upon such innocent holder of collateral negotiable paper the consideration of which is shown to have failed, to show that his debt is unpaid and the amount due thereon; and his recovery should be restricted to the amount so shown." Wright v. Hardie, 88 Tex. 653, 32 S. W. 885; Harrington v. Claflin, 91 Tex. 294, 42 S. W. 1055; Van Winkle Gin Co. v. Bank, 89 Tex. 147, 33 S. W. 862; Wharton v. Bank (Tex. Civ. App.) 153 S. W. 699; Iowa City State Bank v. Friar (Tex. Civ. App.) 167 S. W. 261.

It does not appear, either in the pleadings or from the evidence, how much collateral other than the appellee's note had been pledged by the Paris bank to the Dallas bank. We may assume that the value of the collateral was equal to or in excess of the amount of the debt which it was pledged to secure.

Had it been otherwise the commissioner would not have been authorized to redeem it by paying the full amount of the debt.

In this proceeding the commissioner has the same burden of pleading and proving a necessity for resorting to the note of the appellee in order to secure reimbursement for the amount paid to the Dallas bank. He can claim no greater rights than those of a bona fide purchaser from that bank. Since the record contains neither pleading nor proof that such a necessity existed, it may be assumed that it did not exist and that the collateral held by the Dallas bank other than the appellee's note was sufficient to discharge that debt. We are therefore of the opinion that the transaction with the Dallas bank is not sufficient to defeat the appellee's right to claim the benefit of the set-off which here pleads.

[9, 10] The fact that the appellee subsequently presented a claim in the name of the baking company and received a dividend is of no importance as destroying the claim which he had a right to present. At most it could be urged only as an estoppel, and we think it has none of the elements essential to an estoppel. It did not cause the banking commissioner to change his attitude or lose any of the rights which may be asserted in the final settlement of the controversy. The commissioner should have full credit for that portion of the dividend received by the appellee upon the claim presented in the name of the baking company.

[11] A complaint is made that the judgment is less than it should have been, even after allowing the offset pleaded by the appellee. We are of the opinion that this complaint is well founded. Allowing interest on the appellee's notes up to the time the bank closed and giving the commissioner credit for the sum of $450 received by the appellee on the claim presented in favor of the baking company, appellant would be entitled to a balance of $385.16 instead of $79.05 awarded by the court. We do not think the commissioner is entitled to recover attorney's fees, since the appellee had a good and valid defense to the extent above mentioned.

[12] The judgment of the trial court will be reformed so as to correct the error pointed out, and, as reformed, affirmed. Since no complaint seems to have been made of that error in the trial court, the costs of this appeal will be taxed against the appellant.

Reformed and affirmed.